FLYNN, Respondent, *v.* HELENA CAB & BUS CO., Appellant.

KIMPTON, Respondent, *v.* HELENA CAB & BUS CO., Appellant.

(No. 7,082.)

(Submitted April 5, 1933. Decided April 29, 1933.)

[21 Pac. (2d) 1105.]

*Mr. M. J. Thomas* and *Messrs. Gunn, Rasch, Hall & Gunn,* for Appellant, submitted an original and a reply brief; *Mr. Carl Rasch* argued the cause orally.

*Messrs. Smith, Mahan & Smith* and *Mr. J. R. Wine,* for Respondents, submitted a brief; *Mr. John W. Mahan* and *Mr. Wine* argued the cause orally.

208

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action arose out of a collision between two automobiles at the intersection of Davis and Breckenridge Streets in the city of Helena. The collision occurred on February 3, 1931. On that day Flynn and Kimpton were traveling north on Davis Street in a Ford coupé owned and driven by Kimpton. The other car was a taxicab proceeding westward on Breckenridge Street; it was owned by defendant and then being driven by John Patchett, its employee. The cars collided at the intersection, resulting in personal injuries to Flynn and damage to the Kimpton car. These actions followed. The two cases were tried together by agreement of the parties. Both plaintiffs prevailed. Defendant appealed.

The complaints in the two actions are identical, except as to damage claimed. They charge negligence on the part of defendant's employee, Patchett, based upon excessive speed, failure to keep a lookout, failure to give warning, and wantonly turning his car to the right and driving into that in which plaintiffs were riding when there was ample room to pass by without a collision.

Subdivision (d) of paragraph V of the complaint alleges: "That there was then and there in force a duly and regularly passed and approved ordinance of the city of Helena, Montana,

providing in substance that in running upon streets and avenues automobiles should not exceed the rate of twenty-five miles per hour and that the said John Patchett, chauffeur aforesaid, was then and there violating the said ordinance by going at a rate of speed greatly in excess of twenty-five miles per hour, or greater, over and across said intersection."

The answer was a general denial and a plea of contributory negligence on the part of plaintiffs in violating an ordinance, the material parts of which provide that "vehicles meeting and passing at street corners or intersections shall be governed by the following rules except as herein otherwise provided: Each driver of a car or other vehicle approaching a street corner or road intersection shall keep careful watch of all cars, or vehicles, approaching said street or road intersection from his right, and shall give right of way to every such car, or vehicle. The intention of this provision being that all drivers of vehicles shall be required to maintain a particularly careful watch upon all vehicles to their right, or approaching from the right at crossings and shall give preference and right of way to all such vehicles and must halt or slow down sufficiently to allow such vehicles to pass in front of them."

Plaintiffs' evidence was to the effect that when they were 40 feet south of the south line of the intersection of Davis and Breckenridge Streets they saw defendant's car on Breckenridge about 300 feet from the intersection. When plaintiffs entered the intersection, defendant's car was about 150 feet from it. Kimpton's car was going about 18 miles per hour, defendant's more than 40. The width of the intersection from the south to the north line is 56 feet, and from east to west about 40 feet. Plaintiffs had gone 50 feet in crossing the intersection before the car was struck. It was struck on the right rear wheel and fender by the left front fender of defendant's car. As the Kimpton car entered the intersection, Flynn said to Kimpton, "Look out, this fellow is coming." As the Kimpton car passed a manhole near the center of the intersection, Flynn again said, "Look out for this fellow,

he is going to get you." Kimpton accelerated his speed and turned to his left. Patchett then applied his brakes and skidded 25 or 30 feet, then released the brakes and turned to the right, striking the Kimpton car. The Kimpton car was past the center of the intersection before defendant's car entered it.

There was evidence that, had the defendant's car gone straight ahead or turned slightly to the left rather than to the right, no collision would have taken place. As a result of the impact the Kimpton car was overturned and came to rest on the north crosswalk facing east. Defendant's car came to a stop facing north. Besides those occupying the cars, there were two eye-witnesses to the collision. Jean Heller observed it while standing on the sidewalk at the northeast corner of the intersection. She said, "I watched those two cars continuously until they came together. As to why I did that, well, because the rate the taxi was going and the way the coupé was coming down the street, I was sure there was going to be an accident."

Mrs. Raymond stood at the southwest corner of the intersection when the collision occurred. She said: "I was standing right on the corner, in the expectation there would be a smashup; that was my expectation; the taxi did not slow up its speed at all. You state you know that is what I have been telling you. I was standing there, expecting something to happen, expecting there would be a crash. I had that notion or that idea the very moment I saw the Ford going to the north, and the other car coming west, and then, I just stood there and watched the two cars come together; that is the idea. I do not know how to answer the question as to whether I paid very much attention as to how fast they were going."

Over defendant's objection, plaintiff was permitted to introduce in evidence subdivision (n) of section 38 of title 8 of Ordinance No. 1138, which in part provides that upon the streets in question "vehicles shall not exceed a speed of 25 miles per hour nor less than 12 miles per hour."

At the close of the evidence, the court, over defendant's objection, permitted the complaint to be amended by pleading subdivision (n) of section 38 of title 8 of Ordinance No. 1138, *in haec verba*, which was the ordinance referred to in subdivision (d), paragraph V, of the original complaint.

Patchett, testifying for defendant, testified that as he was proceeding westward on Breckenridge Street and when 130 or 140 feet east of the intersection with Davis Street, he saw the Ford car 100 feet south of the center of the intersection. The record shows that at the northeast corner of the intersection there is a brick building extending from that corner of the intersection eastward about 75 feet, obstructing the view to the north of one traveling westward. The witness said he was looking to his right as he came to the intersection, though he could not get a view down Davis Street to the north until within a few feet of the intersection and until he passed the southwest corner of the building. When he reached this point, he said he turned his eyes to the front and in the direction in which he was going and saw the Kimpton car. The record shows that at the intersection Breckenridge Street turns at an angle of 30 degrees northward as it proceeds westward from Davis Street, and Patchett testified that in making the turn to the right immediately before striking the Kimpton car, he but followed the traveled portion of the street.

At the close of plaintiffs' evidence defendant moved for a nonsuit, and at the close of all the evidence for a directed verdict. Both motions were denied.

The court instructed the jury that if plaintiffs' car coming from the left "was actually crossing the street intersection" when the taxicab to the right was such distance away that its movements "could not reasonably be supposed to create any danger that the two cars would collide," then plaintiffs were not required to wait until the taxicab had passed, and that, if the driver of the taxicab drove his car "at an unlawfully high and unexpected rate of speed over such intervening dis-

tance and against the Ford car already in the intersection, thereby causing the collision complained of,'' then their verdict should be for plaintiffs, unless they were guilty of contributory negligence.

And by its instructions the court told the jury that if Patchett, when he approached the intersection, saw the Kimpton car he had a right to assume, and act upon the assumption, that it would be operated in compliance with the ordinance and that it would stop and give the taxicab the right of way, ''provided the conditions and circumstances obtaining at that time were such that an ordinarily prudent person would conclude that it was unsafe to attempt to cross said intersection in front of the approaching taxicab,'' and that it was incumbent upon plaintiffs to give the taxicab the right of way only ''if, in view of the conditions then obtaining, in the exercise of ordinary care for their own safety, the said Kimpton or Flynn should have stopped or slowed down.''

It is the defendant's contention that the court erred in its ▮ instructions with respect to the effect of the ordinance pleaded by defendant. The court, it will be noted from the instructions, took the view that the ordinance did not prescribe an absolute rule of conduct in every case, but that it required a traveler to yield the right of way to those on the right only when, under the circumstances, a reasonably prudent man would do so. Defendant contends that the ordinance prescribes an absolute mandatory duty to yield the right of way under the facts here disclosed, and requested instructions to that effect, which were refused.

There are some cases lending support to defendant's view. But the overwhelming weight of authority and the better-reasoned cases we believe support the contrary view. The Court of Appeals of New York, in *Ward* v. *Clark*, 232 N. Y. 195, 133 N. E. 443, had this question under consideration. There the plaintiff when 40 feet from the point of collision observed defendant's car 80 feet therefrom. There, as here, the rear wheel of plaintiff's car was struck. The court, speaking through Mr. Chief Justice Cardozo, in considering the point

we are now discussing, said: "With the plaintiff's car 40 feet away, and the defendant's eighty, there appeared to be sufficient clearance. So at least, a reasonable man might not unreasonably believe. Sudden acceleration of the defendant's speed was not to be foreseen. Even with added speed, the defendant, if he had looked, could have avoided collision by a trifling bend to the left upon an unobstructed street. The plaintiff in shaping his own course might act on the assumption that common skill and prudence would shape the defendant's also. He was not required to foresee the defendant's blind and uncompromising adherence to an undeviating line. The supreme rule of the road is the rule of mutual forbearance. (*Mark* v. *Fritsch,* 195 N. Y. 282, 283, 284, 88 N. E. 380, 133 Am. St. Rep. 800, 22 L. R. A. (n. s.) 632.) The defendant, it is said, had the right of way under the statute. 'Every driver of a vehicle approaching the intersection of a street or public road shall grant the right of way at such intersection to any vehicle approaching from his right.' (General Highway Traffic Law, § 12, subd. 4; Consol. Laws, Chap. 70.) The privilege thus conferred is not inflexible and absolute. A right of way, like a burden of proof, will establish precedence when rights might otherwise be balanced. It helps us little when without it the balance would be unequal. A right of way might turn the scales if, when the plaintiff started to cross, the cars had been equidistant, or nearly so, from the point of the collision, due regard being had also for the speed of their approach. Even with the distances what they were, it was an element which the triers of the facts were to consider in their estimate of conduct. That, in the circumstances of this case, is, we think, the extent of its significance. The plaintiff was not to wait until there was no other car in sight. Such a rule would be unworkable in crowded cities. He was to wait until it was reasonably safe to start. Whether he started when there was danger was a question for the jury."

In *Jackson* v. *Brown,* 106 Conn. 143, 137 Atl. 725, the same conclusion was announced where, when plaintiff entered the

intersection, defendant was 50 feet therefrom. Under facts very similar to those here, the same conclusion was reached in *Taxicab Co.* v. *Ottenritter*, 151 Md. 525, 135 Atl. 587, and *Keller* v. *Waddington*, 142 Wash. 474, 253 Pac. 646. To the same effect are *Metzger* v. *Cushman's Sons*, 243 N. Y. 118, 152 N. E. 695; *Barnes* v. *Barnett*, 184 Iowa, 936, 169 N. W. 365; *Lee* v. *Pesterfield*, 77 Okl. 317, 188 Pac. 674; *Casto* v. *Hansen*, 123 Or. 20, 261 Pac. 428; *Red Top Taxi Co.* v. *Cooper*, 123 Or. 610, 263 Pac. 64; *Howard & Brown Realty Co.* v. *Berman*, 212 Mo. App. 401, 245 S. W. 606; *Salmon* v. *Wilson*, 227 Ill. App. 286; *Boyd* v. *Close*, 82 Colo. 150, 257 Pac. 1079; *Stocker* v. *Newcomb*, 91 Colo. 479, 15 Pac. (2d) 975; *Ray* v. *Brannan*, 196 Ala. 113, 72 So. 16, and *Garner* v. *Brown*, 31 Wyo. 77, 223 Pac. 217.

The ordinance granting the right of way to vehicles approaching from the right does not require the one approaching from the left to yield the right of way under all circumstances and conditions. "The right of way depends, to some extent upon the relative position of the vehicles. * * * If a traveler, not having such right of precedence, comes to the crossing and finds no one approaching it upon the other street within such distance as reasonably to indicate danger of interference or collision, he is under no obligation to stop or to wait, but may proceed to use such crossing as a matter of right." (Huddy on Automobiles, 8th ed., sec. 311, and cases there cited; see, also, notes in 21 A. L. R. 982 and 47 A. L. R. 603.)

The court properly instructed the jury on the effect and application of the ordinance, and properly refused to instruct as requested by defendant.

Defendant also contends that even if the court properly instructed the jury as to the effect of the ordinance, plaintiffs are precluded from recovery by reason of their contributory negligence. Its contention is that, since plaintiffs saw the taxicab of defendant proceeding toward the intersection at 40 miles per hour and that it had traveled 150 feet while

the Kimpton car went 40 feet, and since the taxicab was only 150 feet from the intersection when the Kimpton car entered it, as reasonable men they should have anticipated that, if they proceeded forward, a collision would be inevitable, as plaintiffs' witnesses Miss Heller and Mrs. Raymond thought as they watched the two cars. This contention cannot be sustained. Plaintiffs in attempting to cross the intersection had a right to assume that the driver of the taxicab would keep a lookout upon approaching the crossing—that he would keep a lookout not only to his right against the brick building which obstructed his view in that direction, but laterally ahead. (*Autio* v. *Miller*, 92 Mont. 150, 11 Pac. (2d) 1039.) They were warranted in assuming that, had the driver of the taxicab kept a proper lookout, he would have seen the Kimpton car well in the intersection while the taxicab was still more than 100 feet therefrom. As reasonable men, the plaintiffs were warranted in believing that the driver of the taxicab would obey the state law (sec. 1743, Rev. Codes 1921), and slow down and have his car under complete control upon approaching the intersection, and particularly when he should have seen the Kimpton car already on the intersection, and thus give plaintiffs ample time to cross in safety. (Compare *Primock* v. *Goldenberg*, 161 Minn. 160, 200 N. W. 920, 37 A. L. R. 484, and *Whitelaw* v. *McGilliard*, 179 Cal. 349, 176 Pac. 679.) They had the right to suppose that the driver of the taxicab, in the discharge of his duty to those who might be approaching the intersection from his right, would not only keep a proper lookout but would so operate, and control the speed of, his car as to make his looking effective. The discharge of this duty called for a slackening of speed.

Indeed, the record shows that the judgment of plaintiffs in believing they could cross in safety was not misplaced. The evidence warrants a finding that, had the taxicab continued straight ahead or made a slight turn to the left instead of to the right, the Kimpton car would not have been struck. It was struck because of the fact that the taxicab turned to the

right, resulting in the collision. This is borne out by the physical facts. It was the left front fender of the taxicab that struck the Kimpton car.

Plaintiffs, in shaping their own course, could act on the assumption that common skill and prudence would shape that of defendant's driver also. They were not required to foresee his blind and uncompromising adherence to an undeviating line or an unaltered speed. (*Ward* v. *Clark,* supra; and see to the same general effect, *Jackson* v. *Brown,* supra, *Taxicab Co.* v. *Ottenritter,* supra, and *Keller* v. *Waddington,* supra.)

Nor is the situation necessarily changed by the fact that plaintiffs knew that the driver of the taxicab was proceeding at an unlawful rate of speed. Though some courts have held that plaintiff's knowledge of the unlawful speed precludes recovery by him, of which the case of *St. Mary's Academy* v. *Newhagen,* 77 Colo. 471, 238 Pac. 21, is typical, we decline to adopt such a rule. Under the evidence here the jury was warranted in finding that plaintiffs had proceeded too far to stop in a zone of safety before discovering that the driver of the taxicab was blindly relying and resting upon his asserted right to the right of way as against everyone but those who had approached the intersection from his right and taking no precautions for the safety of others.

The court properly submitted the issue of plaintiffs' contributory negligence to the jury, and the evidence does not warrant interference with its finding.

Finally it is contended that evidence of the speed of defendant's car was inadmissible under the pleadings, because the ordinance was not properly pleaded in the original complaints, and that it was error to permit the complaints to be amended after the close of the evidence to properly plead the ordinance. No attack was made in the court below upon the method of pleading the ordinance in the original complaints. Where a pleading is attacked for the first time in this court after trial in the district court on the merits, we will not too closely scrutinize it. (*Alley* v. *Peeso,* 88 Mont. 1, 290 Pac.

238; *First Nat. Bank of Glendive* v. *Conner*, 85 Mont. 229, 278 Pac. 143.)

Whether the original complaints properly pleaded the ordinance in view of the case of *Dineen* v. *City of Butte*, 83 Mont. 370, 272 Pac. 243, had the question been raised before trial in the court below, we need not now determine. Suffice it to say that, if it was defectively pleaded in the original complaints, it was a defect in form and not of substance. It charged that Patchett was going at a rate of speed in "excess of 25 miles per hour," and evidence of speed was admissible whether the ordinance was properly pleaded or not.

The question of permitting the amendment to the complaints after the close of the evidence was one addressed to the discretion of the trial court. (*De Celles* v. *Casey*, 48 Mont. 568, 139 Pac. 586, and see *Besse* v. *McHenry*, 89 Mont. 520, 300 Pac. 199.) Under the circumstances here shown, the court did not abuse its discretion in permitting the amendments.

No error appearing, the judgments are affirmed.

Mr. Chief Justice Callaway and Associate Justices Matthews, Stewart and Anderson concur.

Rehearing denied May 23, 1933.