No. 12054

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

CLIFFORD COLLINS,

Plaintiff and Respondent,

-vs-

J. D. VANSANT,

Defendant and Appellant.

---

Appeal from: District Court of the Eleventh Judicial District,
Honorable Robert S. Keller, Judge presiding.

Counsel of Record:

For Appellant:

Murphy, Robinson, Heckathorn and Phillips, Kalispell,
Montana.
I. James Heckathorn argued, Kalispell, Montana.

For Respondent:

McGarvey, Morrison, White & Hedman, Whitefish, Montana.
Donald E. Hedman argued and Frank Morrison, Jr. argued,
Whitefish, Montana.

---

Submitted: March 14, 1972

Decided: MAY 5 1972

Filed MAY 5 1972

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an action for personal injuries and property damage arising out of a two car collision on a private parking lot of a shopping center located at the west end of Libby, Montana. The cause was tried to a jury in the district court of the eleventh judicial district, county of Lincoln. At the close of all evidence, defendant moved the court for a directed verdict which was denied. Following a jury verdict for plaintiff, defendant moved for judgment notwithstanding the verdict or in the alternative for a new trial. Both motions were denied. From the final judgment defendant appeals.

The accident involved in this action occurred on September 30, 1968, at approximately 5:30 to 6:00 p.m., in the private parking lot of Rosauer's Shopping Center. The buildings which comprise the shopping center are in the form of a rectangle with the longest dimension running in a general east-west direction with the shops facing U.S.Highway No. 2, which likewise runs in a general east-west direction. At the time of the accident there were no curbs in place between U.S.Highway No. 2 and the private parking lot, which is between the buildings and the highway. This large parking lot contains three rows for parking delineated by painted stalls. There is one single row adjacent to the buildings, double rows near the center of the lot and a second set of double rows near the highway. Between the parking rows on the lot are lanes for driving which also run in a general east-west direction and are parallel to the buildings. Vehicles when parked within the designated stalls face either north or south.

Proceeding from the west end of the shopping complex, there is a drug store, a Gambles store, a grocery store and at the east

end of the complex is a collection of adjacent unidentified stores. At the eastern end of the parking lot in a separate building next to the highway is a service station. The parking lot has an east-west length in excess of 300 feet.

On the day of the accident there were very few cars in the parking lot and all were parked in the single row of stalls fronting the shopping complex. It was a sunny day, visibility was good, and the sun was setting in the west approximately over the Gambles store and the drug store at the west end of the row of stores.

Two automobiles were involved in the collision; one driven by plaintiff, Clifford Collins; the other driven by defendant, J. D. Vansant. Both drivers were accompanied by their wives and were on errands in the shopping center. Defendant's automobile entered the parking lot at the extreme east end near the service station after making a left turn from the westbound traffic lane of U.S. Highway No. 2. He proceeded in a westerly direction down the driving lane parallel to the buildings between the two double rows of painted parking stalls.

At about the same time, plaintiff's automobile made a right turn from the eastbound traffic lane of U.S.Highway No. 2 and entered the parking lot near the westerly end. Plaintiff's automobile proceeded to drive in a southerly direction toward the row of stores by driving across the painted stalls next to the highway intending to park in the middle row of painted parking stalls, but not driving in a designated driving lane.

It was as plaintiff crossed the traffic lane between the two double rows of parking stalls that the automobiles collided with the right front bumper and fender of defendant's automobile striking the plaintiff's automobile at the door on the driver's

side. The angle of collision was less than 90 degrees and both automobiles came to rest facing the same general southward direction.

It was estimated that defendant's automobile traveled approximately 250 to 300 feet from the point of entry into the lot at the east end to the point of collision; and that plaintiff's automobile traveled a measured distance of 150 feet from the highway at the point of entry into the lot to the point of collision.

As to his entry and driving into the parking lot, plaintiff Collins testified alternatively at various times in this action as follows: In his pretrial deposition plaintiff stated that he had not seen defendant from the time he, plaintiff, turned off the highway; at trial he stated that he watched defendant proceed on a straight course until he was two or three car lengths from impact; at another point in the trial plaintiff testified that he watched defendant "until he was about half way up in the parking lot, but he was quite a ways from me when I turned in." The turn to which plaintiff made reference was not the turn into the parking lot but was the turn into "where I was going to park." However, at a subsequent point, plaintiff denied he made any turn into a parking stall but rather that he was driving directly into a parking stall and from the point of his last sight of the defendant's automobile, plaintiff stopped watching the defendant's automobile and concentrated on parking.

As to his entry into and driving through the parking lot, defendant testified that he never at any time saw the plaintiff's automobile until the time of impact. Defendant testified that the sun was in his eyes, it being to his front and to his left, approximately over the west end of the shopping center which would be either the Gambles store or the drug store. Each party testified that the speed of his automobile was approximately five miles per hour.

We note here that at the time of the accident defendant was driving his automobile without glasses in violation of a restriction on his driver's license requiring glasses to be worn when operating a motor vehicle. Additionally, plaintiff did not have the sight of his left eye, such condition having existed since 1940.

Defendant presents four issues for review:

1) Failure to grant defendant's motions for dismissal and for directed verdict at the close of evidence.

2) Failure of the court to enter judgment for defendant notwithstanding the verdict, in accordance with defendant's motion.

3) Failure of the court to grant a new trial.

4) Insufficiency of the evidence to support the verdict and judgment.

Defendant's first issue on appeal---failure to grant defendant's motions for dismissal and for directed verdict at the close of evidence, presents the substance of the legal issues of defendant's appeal and it is to this issue that the Court directs its attention.

As both parties agree that statutory regulation of highway traffic applies only on public ways and not on private property, we need not explore that area, except to point out a discussion on this point in 62 ALR2d 288, §2 which states:

> "In the few cases found involving intersectional collisions between moving vehicles within parking lots constituting private property, statutory rules of the road have been held technically inapplicable, and the duty and liability of the respective vehicle drivers has been determined under the application of basic principles of negligence law, with the aid, by analogy at least, of widely recognized rules of the road."

This seems to establish a satisfactory standard.

Plaintiff argues the duty which attaches to defendant is to keep a lookout and maintain such control as to make this lookout effective. Plaintiff must realize he is vested with an equal duty and in breaching this duty negligence will attach. This has been

affirmed by this Court many times since the doctrine was established in Autio v. Miller, 92 Mont. 150, 11 P.2d 1039.

Plaintiff further argues that one of "the general rules of the road" which may, by analogy, be applied to the present problem is that the automobile on the right has the right of way. Plaintiff then cites a number of intersection cases and relies heavily on Flynn v. Helena Cab & Bus. Co., 94 Mont. 204, 21 P.2d 1105 and Ward v. Clark, 232 N.Y. 195, 133 N.E. 443, cited in Flynn, to establish his position as the favored driver and defendant's blind and uncompromising adherence to the undeviating line of travel, so to speak, to relieve plaintiff of any contributing proximate cause in this collision.

We decline to accept the analogy to the intersection situations relied upon by plaintiff.

The testimony of plaintiff was that he did see the defendant's automobile at the east end of the parking lot but that subsequently he, plaintiff, concentrated on parking his own automobile without further considering the location of the defendant's automobile. It is of particular significance that it was the plaintiff's automobile that was crossing the parking lot ignoring the painted driving lanes marked on the parking lot and at a diagonal path to the ordinary flow of traffic in the traffic lanes between the rows of painted parking stalls. It was a clear case of derogation of duty on the part of plaintiff in failing to obey the ordered traffic pattern to which the defendant was complying. Plaintiff seeks to attach the duty of lookout without obeying the driving pattern which creates the duty. Plaintiff's action constituted contributory negligence regardless of the preexisting negligence of defendant, if any, in failing to look. Accordingly, the district court erred in not granting defendant's motion for a directed verdict at the close of plaintiff's case.

From the record it is clear that defendant raised the affirmative defense of contributory negligence of plaintiff. Blashfield Cyclopedia of Automobile Law and Practice, Vol. 9C, § 6103, states:

> "Even in those states where the burden of proving the issue of plaintiff's contributory negligence rests on the defendant, it may be established by the plaintiff's own evidence, and the defendant may take advantage of such showing on motion for nonsuit.
>
> "In such cases, the plaintiff proves himself out of court, and, if the motion is made in apt time, judgment of nonsuit will be entered. * * *"

We agree and cite Knowlton v. Sandaker, 150 Mont. 438, 448, 436 P.2d 98:

> "Our conclusion that appellant failed to make a case which could go to the jury is buttressed by the long-established rule in Montana that, '"The plaintiff has made out a <u>prima facie</u> case when his evidence discloses injury to himself and that the negligence of the defendant was the proximate cause of it. [Citing previous cases.] It is the rule, also, that when the circumstances attending the injury, as detailed by the plaintiff's evidence, raise a presumption that he was not, at the time in the exercise of due care, he has failed to make out a case for the jury. The burden is then upon him, and if he fails to introduce other evidence to remove the presumption, he is properly nonsuited." George v. Northern Pac. Ry. Co., 59 Mont. 162, 171, 196 P. 869.' Stevens v. Waldorf-Hoerner Paper Products Co., 149 Mont. 306, 425 P.2d 832."

Accordingly, the judgment is reversed and the cause dismissed.

Associate Justice

We Concur:

Chief Justice

Associate Justices.