LENORA YATES, Plaintiff and Respondent, v. MARK H. HEDGES, Defendant and Appellant, LENORA YATES, Plaintiff and Respondent, v. RICHARD H. HEDGES, Defendant and Appellant.

No. 14049.
Submitted Aug. 25, 1978.
Decided Oct. 17, 1978.
585 P.2d 1290.

George, Williams & Benn, Missoula, for defendants and appellants.

Goldman & McChesney, Missoula, for plaintiff and respondent.

MR. JUSTICE DALY delivered the opinion of the Court.

This case arose from an intersection collision at the corner of Burns and Defoe Streets in Missoula, Montana, on January 3, 1974. Plaintiff Lenora Yates was driving north on Burns Street and defendant Mark Hedges was driving west on Defoe Street when their vehicles collided in the intersection. Yates brought action to recover damages for the loss of value of her car, for the lost use of her car, and for pain and suffering from personal injury, naming Mark Hedges, the driver, and Richard Hedges, his father and owner of the car, as defendants. Richard Hedges also counterclaimed against Yates for damages to his vehicle.

In a nonjury trial before the Fourth Judicial District Court, Missoula County, plaintiff's claim against the father, Richard Hedges, was dismissed and the court entered judgment for Yates against Mark Hedges, awarding her damages for the value of her car, less salvage. From that judgment, Mark Hedges and Richard Hedges seek review of the determination of Mark Hedges' negligence and of the counterclaim of Richard Hedges.

The findings of fact which the District Court relied on to conclude that Mark Hedges was liable for the damages to the Yates car are:

"That the Yates vehicle was travelling in a northerly direction on Burns Street and the Hedges vehicle was travelling in a westerly direction on Defoe·Street. That the Yates vehicle, a 1970 Spitfire Triumph, had proceeded through the intersection after looking both ways on Defoe Street and was almost through the intersection when the Hedges vehicle struck the Yates vehicle in the right rear quarter panel pushing the Yates vehicle approximately 25 feet to the northwest corner of the intersection, the Yates vehicle coming to a stop against a tree five feet from the intersection.

"That the Defendant Mark H. Hedges, testified and, on Plaintiff's Exhibit No. 4, marked the Exhibit with a 1 in a circle which showed the position of Plaintiff's vehicle at the time of ·impact and the Plaintiff's· vehicle was almost through the intersection."

The court's conclusion of law further describe the circumstances of the accident:

"That the above-named Plaintiff was almost through the intersection of Burns and Defoe when the automobile driven by Mark H. Hedges struck Plaintiff's automobile in the right quarter panel. "That the above-named Plaintiff was not negligent in driving her automobile through the intersection of Burns and Defoe."

Appellants contend the evidence compels a contrary conclusion—namely, that the proximate cause of the collision was the negligence of Yates and that Mark Hedges was not negligent in the operation of his vehicle. Specifically, they bring three issues for review:

1. Did plaintiff's act of accelerating to "beat" defendant's vehicle through intersection, when defendant's vehicle had the right-of-way, constitute negligence proximately causing the intersection collision?

2. Did plaintiff's entry into the intersection without observing defendant's vehicle further constitute negligence?

3. Did defendant exercise due care by braking as soon as he observed plaintiff's vehicle and swerving in an attempt to avoid the collision?

Appellate review of these questions is limited to whether the findings of fact of the District Court are supported by substantial evidence. As will be seen, there are substantial conflicts in the evidence. Conflicts alone, however, do not constitute grounds for reversal, if "substantial evidence appears in the record to support the judgment" of the District Court. *Strong v. Williams* (1969), 154 Mont. 65, 68, 460 P.2d 90, 92. In reviewing the record for substantial evidence, this Court is further constrained to view the evidence "in the light most favorable to the prevailing party in the district court." *Noll v. City of Bozeman* (1977), 172 Mont. 447, 564 P.2d 1296, 1298; *Johnson v. Johnson* (1977), 172 Mont. 94, 560 P.2d 1331, 1333.

This Court has further refined the substantial evidence rule, however, to clarify its function as a reviewing court. Thus, where evidence is "inherently impossible or improbable", it is not treated as substantial evidence which may be relied upon to support a judgment. *Davis v. Davis* (1972), 159 Mont. 355, 361, 497 P.2d 315, 318; *Strong v. Williams*, 154 Mont. at 68, 460 P.2d at 92. The review must also be of the *entire* record, to determine whether a "preponderance of the evidence" is against the District Court's findings. *Kearns v. McIntyre Construction Co.* (1977), 173 Mont. 239, 567, P.2d 433, 438; *Horacek v. Hudson* (1975), 167 Mont. 394, 397, 538 P.2d 1019, 1021.

The first contention of appellants is that Yates proximately caused the collison by accelerating rather than stopping when Hedges had the right-of-way. This contention requires an examination of the evidence to determine first, whether the right-of-way statute applies, and second, whether a right-of-way violation, if any occurred, was the proximate cause of the accident. The statute at issue is section 32-2170(a), R.C.M.1947, which reads:

"When two (2) vehicles enter or approach an intersection from different highways at approximately the same time, the driver of

the vehicle on the left shall yield the right of way to the vehicle on the right."

The District Court made no specific finding that the two vehicles approached the intersection at approximately the same time or at different times. Findings of Fact Nos. II and III refer only to the position of the Yates vehicle as "almost through the intersection" when the collision took place. The court's findings, however, imply that Yates arrived in the intersection first, and therefore, in that court's judgment, the statute does not apply. Cf. *Richardson v. Howard Motor Co.* (1973), 163 Mont. 347, 351, 516 P.2d 1153, 1155 (implied findings of fact).

The District Court appears to have relied upon the testimony that the collison took place at a point where the Yates vehicle was almost through the intersection ahead of Hedges. Viewed in isolation, this single fact appears to substantiate the finding. Viewing the record as a whole, however, the evidence clearly points to the conclusion that both vehicles approached the intersection at the same, or nearly the same time. A review of the testimony indicating the speed, position, and actions of each driver is helpful to demonstrate this point.

The evidence shows that Mark Hedges traveled west on Defoe Street. Conditions on that street, as well as Burns, were icy and slippery. He testified that he approached Burns at about 25 miles per hour and that he observed Yates vehicle on his left, coming toward the intersection with Defoe. At his first point of observation of the Yates vehicle, he testified he was some 50 feet from the intersection while Lenora Yates was somewhat further away, between 50 and 75 feet. Hedges proceeded toward the intersection and, according to his testimony, braked his car, slowing to approximately 20 miles per hour. At that point, he saw that Yates was not slowing, but continuing into the intersection. To avoid a collision, he turned to the right to try getting out of her pathway. His effort proved unsuccesful, and the cars came together in the far north portion of the intersection.

On direct examination by Yates' counsel, Hedges testified that

his purpose in turning right was to avoid a more direct collision with the Yates vehicle.

"Q. Is there any reason why you did not turn to the left to avoid making contact? A. Well, if I had turned to the left, I think it would have been more of a headon, rather than the way it turned out. I tried to turn to avoid hitting her car."

Lenora Yates testified she did not see any of the movements of the Hedges vehicle until she had entered the intersection. Her testimony as to the speed of his vehicle is somewhat equivocal, indicating on direct examination that Hedges appeared to be going "over 20 miles per hour, 25 miles per hour", and responding to cross-examination that he was going 35 or 40 miles per hour. Yates testified further that when she first observed Hedges he was 75 to 100 feet from the intersection. In response to a cross-examination question which confronted her with the improbability of that testimony, Yates seemingly accepted that Hedges could have been going as fast as 60 miles per hour:

"Q. Wouldn't that mean that the Hedges vehicle was traveling perhaps 50 or 60 miles per hour in order to reach the intersection while you were still in it?

":(Objection overruled.)

"A. He may have been. He may have been. I am not good at estimating. I just know that he was coming fast."

In summary, Hedges described a situation in which he was approaching an unmarked intersection at a lawful speed when he was confronted by a car entering the intersection from his left at about the same time, which showed no sign of either stopping or slowing. He described his effort to slow his vehicle and avoid a collision by turning away from the other car's path. Yates' description of the movements of Hedges' vehicle leaves much confusion, including her conflicting testimony of his speed and the improbable estimate of his distance from the intersection.

The evidence of Lenora Yates' movements just prior to the collision shows she approached the intersection by traveling north on

Burns Street. She testified she was driving about 20 miles per hour, and that she slowed to about 15 miles per hour as she came into the intersection. According to her testimony, cars parked along the south side of Defoe Street prevented her from seeing the Hedges vehicle approaching to her right. She saw Hedges for the first time after she was about one quarter of the way into the intersection. Her testimony is that, at that point, he was from 75 to 100 feet away. Her response was to accelerate ". . . because I thought that I had enough time to make it through the intersection. I thought he would stop." She also swerved some to the left after seeing Hedges.

Mark Hedges testified that Yates' speed appeared to be around 35 miles per hour, and that she showed no sign of slowing as she entered the intersection. He also, indicated that her car was approximately on the center line of Burns when the two vehicles came together.

In summary, Yates testified that she did not see Hedges until she had come one-fourth of the way into the intersection. When she saw him coming from her right, she accelerated and swerved some to her left, coming into contact with his vehicle on the north end of the intersection.

Taking the evidence of both drivers' actions as a whole, it appears that the reason the collision occurred in the north portion of the intersection, at a point where the Yates vehicle was almost through the intersection, is that Yates accelerated to get ahead of Hedges, while Hedges *turned north* to avoid striking her directly after trying unsuccessfully to stay out of her way by braking on the icy roadway. The District Court does not list among its findings of fact that Hedges was, as Yates testified, 75 to 100 feet away when she entered the intersection, nor does it appear to rely on this testimony as substantial evidence in support of its judgment. It is unnecessary then to determine where, as appellants contend, the "75 to 100 feet" testimony is inconsistent with the physical facts of the accident.

Viewing the evidence in the light most favorable to Yates, it is

still difficult to escape the conclusion that the two vehicles approached the intersection at times close enough together to call for deference to the driver on the right. The rule for drivers approaching an intersection is primarily one of reasonableness:

"If a traveler, not having such right of precedence, comes to the crossing and finds *no one approaching it upon the other street within such distance as reasonably to indicate danger of interference or collision*, he is under no obligation to stop or to wait, but may proceed to use such crossing as a matter of right." *Flynn v. Helena Cab & Bus Co.* (1933), 94 Mont. 204, 214, 21 P.2d 1105, 1108. (Emphasis added.)

Here, there was another driver approaching on the right within a distance that reasonably indicated danger of interference or collision. Yates was under a legal duty to yield to him rather than accelerate to try to make it through the intersection before him.

*DeVerniero v. Eby* (1972), 159 Mont. 146, 496 P.2d 290, presented a situation nearly identical to the facts in this case. There, a north-bound driver (defendant) and a west-bound driver (plaintiff) collided at an unmarked intersection. The defendant seeing the plaintiff coming from his right only after he entered the intersection, accelerated "because I thought I could get out of the way in time". 159 Mont. at 149, 496 P.2d at 291. In that case, as in the present matter, the plaintiff's car struck the defendant's right *rear* door, but that fact did not prevent application of the right-of-way statute. This Court held that the defendant, by accelerating to get through the intersection, had breached his statutory duty to yield to the car on the right. 159 Mont. at 151, 496 P.2d at 292.

■ Appellants also contend that Yates' breach of statutory duty proximately caused the collision. The breach of such a duty constitutes negligence *per se*, but a causal connection must still be established between the breach of duty and the injury. ". . . [W]hen the breach of a statutory duty is alleged, that duty required by statute must be the efficient or proximate cause of the damages for negligence to be predicated on the violation of the statute." *Erickson v. Perrett* (1976), 169 Mont. 167, 172, 545 P.2d 1074,

1077; W. Prosser, *The Laws of Torts*, 4th Ed., § 36, p. 200-01. Proximate cause, in turn, is defined as a cause "'which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and *without which the injury would not have occurred.*'" *DeVerniero v. Eby*, 159 Mont. at 152-53, 496 P.2d at 293 (quoting *Stroud v. Chicago, M. & St. P. Ry. Co.* (1926), 75 Mont. 384, 393, 243 P. 1089, 1092). (Emphasis added.)

In this case it is clear the collision would not have occurred without the violation of the right-of-way statute by Yates. The statute is intended to accord vehicles approaching or entering an intersection the status of favored and disfavored drivers "to facilitate the orderly movement of automobiles." *DeVerniero v. Eby*, 159 Mont. at 151, 496 P.2d at 292. Had Yates complied with her duty by yielding to approaching traffic on her right, the vehicles would have passed each other in an orderly manner.

Because the negligence of Yates is established under appellants' first contention, it is not necessary to consider their second contention that Yates was negligent for failing to keep the required lookout before entering the intersection.

■ Appellants' final contention is that Mark Hedges was not negligent and that Richard Hedges, the owner of the vehicle which Mark drove, is entitled to recover on his counterclaim for damages to his vehicle. Respondent contends Mark Hedges was negligent in that he drove at a high rate of speed and that negligence proximately caused the collision. The District Court's finding, however, make no mention of his speed, and Yates' testimony of his speed is so varied as not to form an adequate basis for concluding that he was driving at any particular rate. What remains is that he approached the intersection at the same, or nearly the same, time as the Yates; that he was on her right; and, upon seeing that she was continuing into the intersection, he tried to brake and turn out of her way. Faced with a normal-appearing situation until the time he was almost into the intersection, Hedges had a right to rely upon Yates' compliance with the right-of-way statute. In *DeVerniero*, where the issue involved the alleged contributory negligence of the plaintiff,

who in that case had the right-of-way, this rationale is more fully explained:

"Remembering, also, that it is defendant's duty to yield, there is no law that would hold plaintiff responsible for failure to anticipate that defendant would accelerate to pass in front of plaintiff at the last instant, when there was no chance for plaintiff to stop. Rather, when all appeared normal, plaintiff had every right to assume defendant would yield, as the law requires." 159 Mont. at 143, 496 P.2d at 293.

See also *Pachek v. Norton Concrete Co.* (1972), 160 Mont. 16, 21, 499 P.2d 766, 769; *Flynn v. Helena Cab & Bus Co.*, supra, 94 Mont., at 215, 21 P.2d at 1108-09.

■ Further, as appellants point out, this case does not call for application of the last clear chance doctrine. Hedges was not proceeding in the face of an apparent hazard. See *Flynn v. Helena Cab & Bus Co.*, supra, at 215, 21 P.2d 1105; W. Prosser, *The Law of Torts*, supra, § 66. It is true a driver has no right to ignore obvious dangers in a blind, uncompromising reliance upon his right-of-way, see *Sweet v. Edmonds* (1976), 171 Mont. 106, 555 P.2d, 504, 506, *DeVerniero v. Eby*, supra, 159 Mont. at 153, 496 P.2d 290, 293, but as the plaintiff in *DeVerniero*, Hedges did not proceed "in the face of obvious danger."

■ Similarly, as in *DeVerinero*, the fact that Yates suddenly accelerated through the intersection does not change the complection of the situation so as to "shift the proximate cause" to Hedges. If that were the case, the purpose of the right-of-way statute would be defeated: "If this rationable could be applied to the fact situation, it would by implication render meaningless the right of way regulations *designed* to *avoid, in any case, a race for the intersection...*" 159 Mont. at 153-54, 496 P.2d at 294.

The judgment of the District Court is reversed and the cause remanded with instructions to enter judgment for defendants according to the prayer of defendant Richard Hedges' counterclaim.

MR. CHIEF JUSTICE HASWELL and JUSTICES SHEA and SHEEHY concur.