No. 81-553

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

FRANK DREW THIBAUDEAU,

Plaintiff and Appellant,

vs.

ROBERT LAWRENCE UGLUM,

Defendant and Respondent.

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade
Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

For Plaintiff:

Regnier and Lewis; Stephen D. Roberts, Great Falls, Montana

For Defendant:

Dzivi, Conklin & Nybo; William Conklin, Great Falls,
Montana

Submitted on briefs: August 19, 1982

Decided: November 17, 1982

Filed: NOV 17 1982

_____ Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

In the Eighth Judicial District, Cascade County, plaintiff sued defendant for damages arising out of a car accident and a jury awarded plaintiff $1,088.55. Plaintiff appeals, claiming discovery abuse and error by the court in failing to direct a verdict on the issue of liability. We reverse and remand for a new trial.

On February 21, 1980, at about 2:15 p.m., plaintiff was traveling east on Third Avenue South in Great Falls approaching the uncontrolled intersection of Third Avenue South and 22nd Street. At the same time, defendant was approaching the same intersection traveling south on 22nd Street. The weather was clear and the streets were snow-packed and slippery. According to plaintiff, both vehicles entered the intersection at approximately the same time and the defendant failed to yield the right-of-way to plaintiff, who was on defendant's right. Plaintiff's left front fender struck defendant's right front fender and the vehicles slid, causing plaintiff's left rear fender to strike defendant's right rear fender.

Later that day, plaintiff went to the Great Falls office of defendant's insurance company and it appeared from the evidence at trial that plaintiff filled out a "Report of Facts" form while there. The form was unsigned and at trial plaintiff could not remember filling out the form himself although he also testified that it was his handwriting that appeared on both sides of the document. In the evening of February 21, 1980, plaintiff went to the emergency room of a Great Falls hospital for treatment of lower neck and head pain.

On April 11, 1980, plaintiff filed a complaint in District Court, generally alleging that defendant operated his vehicle in a negligent manner and seeking damages for medical costs, pain and suffering and loss of earnings. Defendant answered, raising as defenses the plaintiff's own negligence and assumption of risk.

On September 16, 1980, plaintiff propounded a set of interrogatories to defendant which included the following language (defendant's answers thereto are included):

> "The information requested herein is not restricted to your personal knowledge, but includes information in the possession of your attorneys and extends to information which you or your attorneys can obtain upon reasonable inquiry. These interrogatories shall be deemed continuing so as to require supplemental answers to be filed promptly upon obtaining further information if you or your attorneys obtain such information between the time answers are served and the time of trial.
>
> " . . .
>
> "INTERROGATORY NO. 3: Have you at any time since the incident referred to plaintiff's Complaint, had or heard any discussion with the plaintiff or any of the plaintiff's agents concerning the same? If so, state:
>
> "(a) The date, time and place where each such discussion took place;
>
> "(b) The name and present address of each person present at said discussion;
>
> "(c) Were any statements, written or otherwise, obtained from anyone, including you, who was interviewed or questioned on your behalf in connection with the incident described in the Complaint? If so, state:
>
> "(1) The name and present address of each person giving such statement;
>
> "(2) The dates upon which such statements were given;
>
> "(3) The names and present addresses of

all persons who have present custody of
such statements.

"ANSWER:   NO.

"(a) Not applicable.

"(b) Not applicable.

"(c) No.

"(1) Not applicable.

"(2) Not applicable.

"(3) Not applicable."

It can be seen from defendant's answers to these interrogatories that plaintiff's attorney was not furnished with the form that was filled out at defendant's insurance company's office.

At trial, plaintiff testified regarding the facts surrounding the accident, that his physical activities had been hampered somewhat as a result of the accident, and that he still had recurrent headaches.  Defendant on cross-examination attempted to impeach plaintiff's testimony by using the information contained on the "Report of Facts" form.  Plaintiff objected to the use of that information because he was unaware of the existence of the form, contending that it should have been supplied to him under the interrogatory request.  Plaintiff's objection was overruled and defendant used information from the form to contradict plaintiff's earlier testimony and discovery statements regarding the speed of the vehicles and when plaintiff first saw defendant.

At the close of both parties' case-in-chief, plaintiff moved for a directed verdict in his favor on the issue of defendant's negligence, which was denied.  After rebuttal testimony from both parties was received, the jury found

-4-

plaintiff's total damages to be $1,814.25, and found plaintiff to be 40 percent negligent and the defendant 60 percent negligent. Accordingly, the judgment plaintiff received against defendant was reduced to $1,088.55.

Plaintiff appeals from that judgment and presents two issues for our consideration which can be stated as follows:

1. Did the trial court err in allowing defendant to cross-examine plaintiff about plaintiff's statements made on the "Report of Facts" form?

2. Did the trial court err in failing to direct a verdict in plaintiff's favor on the issue of liability?

Regarding the first issue, appellant argues that defendant's Exhibit No. 1 (the "Report of Facts" form) should have been produced in response to Interrogatory No. 3 and that the first time appellant was aware that such a statement had been given was at trial, on cross-examination of plaintiff. Appellant further argues that the resulting impeachment had a harmful effect on plaintiff's credibility before the jury as reflected in the small judgment and that, had the document been timely delivered, plaintiff could have refreshed his recollection about the details of the accident prior to trial.

Respondent contends that Interrogatory No. 3 should have been more clearly worded and that it was not clear that the exhibit was a statement executed by plaintiff. Respondent also contends that the effect of the exhibit on the jury was merely cumulative, since plaintiff had also been impeached by inconsistent statements given in an earlier deposition and in answers to interrogatories and by testimony of defense witnesses.

-5-

Plaintiff's statement, given to defendant's insurance company, clearly falls within the ambit of Interrogatory No. 3(c) as a written statement obtained from the plaintiff on defendant's behalf and it was error for the District Court to allow impeachment thereon. It is clear on the face of the document that it was filled out by plaintiff. On the top of the front page under the column entitled "You," plaintiff's name appears. The following statements also appear on the form:

"Who had the right of way?  __me
Describe __I was on his right__

". . .

"Did anyone receive a ticket?  __Yes
Who?  __Mr. Uglum__  For what?  __Not
giving me the right of way__

". . .

"Exactly what was said?  __Nothing we
just called the police__

". . .

"Describe Accident:  __I was going East
on my way home, at 2:10. We both tryed
[sic] to stop but the roads were too icey
[sic] and he was also going too fast for
road conditions. he hit me in the middle
of the intersection pushing me over to
the right and then his rear end of his
car hit mine__                          "

Even a cursory examination of these responses on the form would have indicated that plaintiff filled it out or, at least directed someone else to fill it out, which would still qualify as a "statement" under the interrogatory language.

In his brief, respondent admits that he reviewed the insurance adjuster's entire file when answering the interrogatories and a more thorough examination thereof would have clearly revealed this exhibit. Nor are we persuaded by

-6-

defendant's argument that the plaintiff was not "interviewed" or "questioned" in completing the form. The spirit of the Montana Rules of Civil Procedure requires broad disclosure of knowledge of the case on the part of all parties, Smith v. Babcock (1971), 157 Mont. 81, 482 P.2d 1014, and the result is the same whether the plaintiff was "interviewed," "questioned" or filled out defendant's insurance company's form, i.e., the defendant's insurance company obtained a statement about the accident from plaintiff.

Furthermore, at trial defense counsel admitted they realized that plaintiff had probably prepared the form as the following transcript shows:

> ". . . I participated in the preparation of this case prior to trial, and participated in answering the interrogatories in question, and I want the record to show that I had no idea that Defendant's Exhibit No. 1 was, in fact, a statement prepared by the plaintiff, and <u>Mr. Conklin, when entered this case, discovered that this document had, in fact, probably been prepared by the plaintiff</u> . . ." (Emphasis added.)

Because the interrogatories are, by their language, continuing, it was incumbent upon defense counsel to turn the document over to plaintiff at that time, also. Defense counsel were in violation of Rule 26(e)(2), M.R.Civ.P., which states:

> "(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment."

We have held that reversal and a new trial may be had

where interrogatories were not properly answered, Sanders v. Mt. Haggin Livestock Co. (1972), 160 Mont. 73, 500 P.2d 397.

In this regard, appellant requests that we instruct the trial court to assess reasonable damages pursuant to Rule 37(b), M.R.Civ.P., for defendant's failure to comply with discovery rules. However, Rule 37(b), M.R.Civ.P., relates to failure to comply with a court order compelling discovery, which did not occur here. Thus appellant's request is denied.

The focus of the second issue is whether the trial court should have directed a verdict in plaintiff's favor on the issue of liability. Appellant argues that this should have been done because both vehicles approached and entered the intersection at approximately the same time and plaintiff's vehicle was on the right of defendant's vehicle and thus had the right-of-way. Section 61-8-339(1), MCA, provides:

> "Vehicle approaching or entering inter-
> section. (1) When two vehicles enter or
> approach an intersection from different
> highways at approximately the same time,
> the driver of the vehicle on the left
> shall yield the right-of-way to the
> vehicle on the right."

Appellant also argues that DeVerniero v. Eby (1972), 159 Mont. 146, 496 P.2d 290, is controlling here. In DeVerniero plaintiff and defendant approached an uncontrolled intersection at approximately the same time and collided. Plaintiff was to the right of defendant. This Court found that plaintiff was not contributorily negligent as a matter of law and the jury verdict for defendant was reversed and a new trial ordered on the issue of damages.

Respondent contends that DeVerniero is factually dis-

tinguishable from the instant case and points out that DeVerniero was decided under the old contributory negligence law, rather than under the present comparative negligent statute. Even if we hold that a directed verdict on liability should have been granted, respondent contends there is no need for a remand because plaintiff's damages have already been fixed by the jury ($1,814.25).

The District Court was correct in refusing to grant a directed verdict in plaintiff's favor on the issue of liability. The right-of-way statute, section 61-8-339, MCA, supra, requires that the two vehicles enter or approach the intersection at approximately the same time. The defendant testified that the vehicles did not enter the intersection at approximately the same time and claims that he entered the intersection first. Other testimony, including that of the officer investigating the accident, indicated that the two vehicles did enter the intersection at approximately the same time.

This conflicting testimony raised a factual issue for the jury to decide as to whether defendant entered the intersection first (according him the right-of-way) or whether the vehicles approached or entered the intersection at approximately the same time (giving the right-of-way to plaintiff).

Another factual conflict for the jury's determination is whether the respective drivers kept the proper lookout. Defendant testified that he did not see plaintiff's vehicle until just before defendant entered the intersection. Plaintiff testified at trial that plaintiff was seventy feet from the intersection when he first saw defendant.

However, in answers to interrogatories plaintiff stated that the distance was thirty feet and on Exhibit 1 the distance given was one car length. This evidence raised a jury question on whether each driver had maintained a proper lookout, thus preventing a directed verdict on the issue of liability.

A directed verdict may not be predicated on such conflicts of material fact.

Reversed and remanded.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

Mr. Justice John C. Sheehy will file a special concurring opinion later.

-10-

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 81-553

FRANK DREW THIBAUDEAU,

Plaintiff-Appellant,

vs.

ROBERT LAWRENCE UGLUM,

Defendant-Respondent.

CONCURRENCE AND DISSENT
OF MR. JUSTICE JOHN C. SHEEHY

DATED: January 20, 1983

FILED

JAN 20 1983

Ethel M. Harrison
CLERK OF SUPREME COURT
STATE OF MONTANA

Mr. Justice John C. Sheehy, concurring in part and dissenting in part:

I concur in the remand of this cause for a new trial for the failure of respondent to make adequate discovery. I dissent to the further conclusion of the majority that plaintiff is not entitled to a directed verdict on liability. In my opinion, the defendant in this intersection-collision case is negligent as a matter of law, and the plaintiff is not guilty of any contributory or comparative negligence as a matter of law.

My dissent is based on two grounds: (1) the right of way statute gave the plaintiff an undisputed right to proceed and placed an undisputable burden upon the disfavored driver to stop if necessary to avoid the collision; and (2) that lookout of the plaintiff, proper or otherwise, is not a factor of proximate cause in this case.

I. PLAINTIFF HERE HAD AN ABSOLUTE RIGHT TO THE RIGHT OF WAY.

The collision here occurred on a clear but wintry day at an uncontrolled intersection in urban Great Falls. Plaintiff was approaching the intersection from the right, the defendant from the left. Although there is dispute about their speeds, the evidence indicates that neither was exceeding the speed limit as each approached the intersection and entered it.

The right of way statute provides:

> "61-8-339. Vehicle approaching or entering intersection. (1) When two vehicles enter or approach an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.
>
> (2) The right-of-way rule declared in subsection (1) is modified at through highways and otherwise as stated in this chapter."

Subsection (1) of section 61-8-339, MCA, applies in this case. Without doubt the statute establishes a favored driver on the right

11

of the intersection and a disfavored driver on the left of the intersection.

The language of the statute is that the vehicles "enter or approach" at "approximately the same time." That language precludes any consideration by this Court or the District Court of who entered the intersection first. If in fact the vehicles are entering or approaching the intersection at approximately the same time, it is the duty of the driver on the left to yield to the driver on the right.

The meaning of the word "approximately" as used in this statute was discussed in Moore v. Kujath (Minn. 1947), 29 N.W.2d 883, 886, 175 A.L.R. 1007, where the Minnesota Court said:

> "By approximately, the legislature must have meant the approach to an intersection of two vehicles so nearly at the same time that there would be imminent hazard of a collision if both continued the same course at the same speed. In that case, he on the left should yield to him on the right. While the driver on the left is not required to come to a dead stop as at a through highway stop sign, unless it is necessary to avoid a collision, he nevertheless must approach the intersection with his car so under control that he can yield the right of way to a vehicle within the danger zone on the right . . .."

In Fester v. George (S.D. 1946), 25 N.W.2d 455, 456, it is said:

> ". . . in determining the right of way, it is without legal significance which car actually entered the intersection first if it appears that the vehicles approached or entered the intersection at approximately the same. It follows that the single fact that plaintiff entered the intersection first did not give him a right of precedence over defendant. The controlling issue is whether the two cars were approaching or entering the intersection at approximately the same time; if they were, the plaintiff being on the left, should have yielded to the defendant; if they were not, no question of right of way is presented. The parties are approaching the intersection 'at approximately the same time' whenever the two vehicles are in such a relative position that upon appraisal of all of the factors in the situation it should appear to a man of ordinary prudence approaching

12

> from the left that there is danger of collision
> if he fails to yield the right of way."

Therefore, I cannot agree with the following language in the majority opinion:

> "This conflicting testimony raised a factual issue for the jury to decide as to whether defendant entered the intersection first (according him the right-of-way) or whether the vehicles approached the intersection at approximately the same time (giving the right-of-way to plaintiff.)"

That language does not embody the law, ignores the wording of our right-of-way statute on uncontrolled intersections, and restores the "race to the intersection" test that the legislature itself intended to abolish in 1965.

Section 61-8-339, MCA, is the successor statute to section 32-2170, R.C.M. 1947. Before 1965, the right-of-way statute read as follows:

> "32-2170. Vehicle approaching or entering intersection. (a) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway.
>
> "(b) When two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right . . ."

It will be noted that paragraph (a) of the old statute provided for vehicles where one had entered the intersection and one was approaching the intersection.

Paragraph (b) provided for vehicles entering the intersection at approximately the same time.

The old statute was unsatisfactory, particularly because paragraph (a) provided in effect for a race to the intersection which led to the amendment in 1965.

Paragraph (a) in the old statute was deleted, and a new paragraph provided as follows:

13

> "32-2170. Vehicle approaching or entering
> intersection. (a) When two (2) vehicles enter
> or approach an intersection from different
> highways at approximately the same time, the
> driver of the vehicle on the left shall yield
> the right of way to the vehicle on the right."
> (Emphasis added.)

The amendment in 1965 can be found in Laws of 1965, § 1, Ch. 175.

The statute was again amended in 1979, but without affecting the

language which we have quoted above.

We have heretofore construed the statute in accordance with the

legislative intent until this case. In DeVerniero v. Eby (1972),

159 Mont. 146, 496 P.2d 290, an intersection collision case, this

Court said:

> "Defendant's failure to yield the right of way
> constituted both statutorily recognized duty and
> breach of that duty. It is clear that by
> statutory directive automobiles approaching or
> entering an intersection are accorded the status
> of favored and disfavored drivers to facilitate
> the orderly movement of automobiles." (Emphasis
> added.) 159 Mont. at 151, 496 P.2d at 292.

In Yates v. Hedges (1978), 178 Mont. 488, 585 P.2d 1290,

another intersection collision case, we reversed the District Court

under the provisions of the right-of-way statute where the collision

had occurred at an uncontrolled intersection and stated the

following:

> ". . . The rule for drivers approaching an
> intersection is primarily one of reasonableness:
>
> "'If a traveler, not having such right of
> precedence, comes to the crossing and finds no
> one approaching it upon the other street within
> such distance as reasonably to indicate danger
> of interference or collision,he is under no
> obligation to stop or to wait,but he may proceed
> to use such crossing as a matter of right.'
> (Citing a case.) (Emphasis in original opinion.)
>
> "Here, there was another driver approaching on
> the right within a distance that reasonably
> indicated danger of interference or collision.
> Yates was under a legal duty to yield to him
> rather than accelerate to try to make it through
> the intersection before him." Yates v. Hedges
> (1978), 178 Mont. 488, 495, 585 P.2d 1290, 1294.

14

In Marcoff v. Buck (1978), 179 Mont. 295, 587 P.2d 1305, we reversed the District Court for not applying the right-of-way rule to give the plaintiff on the right of the right of way.

The only two cases in Montana that uphold the right of a plaintiff who was on the left at the intersection to recover damages involved situations where the driver on the left would not have collided with the other vehicle unless the vehicle on the right was violating the law; for example, driving at an excessive rate of speed. See Jessen v. O'Daniel (1960), 136 Mont. 513, 349 P.2d 107, and Flynn v. Helena Cab and Bus Company (1933), 94 Mont. 204, 21 P.2d 1105.

The 1965 legislature, in plain and easily understood language, did what it could to standardize the rights and duties of vehicles approaching or entering an uncontrolled intersection at approximately the same time. The legislature did away with the "race to the intersection" theory of right of way. I trust that anyone construing the effect of the majority opinion here as to the right-of-way statute will understand that it is only an inadvertence, and that DeVerniero, Yates and Marcoff, supra, have not been overruled.

II. THERE IS NO ISSUE OF LOOKOUT AS A PROXIMATE CAUSE IN THIS CASE.

The majority find a possible issue of whether the respective drivers kept a proper lookout. With respect to the plaintiff, that cannot be an issue in this case. It is true that plaintiff testified that he first saw the defendant's vehicle when defendant was 70 feet from the intersection; that in answers to interrogatories, he stated the distance was 30 feet, and on exhibit 1 in the trial, he gave the distance as one car length. While an issue of fact may have existed as to when plaintiff first observed the defendant's vehicle, it has no bearing on proximate cause and is thus not an issue in the case. Again the majority have

15

misapprehended the rights and duties arising from the right of way statute.

In Moffitt v. Dean (Ga. 1951), 65 S.E.2d 637, 639, under the same right-of-way statute, that court said:

> "Under these circumstances, the alleged failure of the defendant to keep a lookout ahead is immaterial since had he observed the approaching vehicle he would have been authorized to proceed across the intersection notwithstanding its approach. It may be conceded that under some circumstances where one approaches an intersection on the right of another vehicle approaching on an intersecting highway he will not be authorized to proceed into the intersection ahead of the other vehicle or to assume that the other will yield the right of way to him. Such a case might be where the vehicle on the left approaches the intersection at a high rate of speed, with obviously no intention of stopping or yielding the right of way to the vehicle on the right, or where the one on the left enters the intersection ahead of the one on the right. Under such assumed circumstances, it might possibly be negligence, as to those riding as passengers in the vehicle on the right, not to exercise caution, slow down, or stop to permit the passing of the vehicle on the left. However, no such facts or circumstances are alleged in the instant case and the courts are not authorized to hypothesize them where nothing in the petition even remotely implies such facts.

I could not improve on the prose of the late Justice Hamley. In Massengale v. Svangren (Wa. 1953), 252 P.2d 317, Judge Hamley wrote:

> "'Every driver has the right to assume that other users of the highway will obey the traffic laws and rules of the road. Accordingly, we have frequently held that a favored driver who has done nothing to confuse or deceive a disfavored driver is entitled to assume that the latter will yield the right of way. (Citing cases.) The favored driver may rely upon this assumption until he becomes aware, or in the exercise of reasonable care should have become aware, that the right of way will not be yielded. (Citing cases.)

> "'Under the established facts of this case, the two vehicles were about equidistant from the intersection as they approached at a speed of approximately 30 miles per hour. Had appellant looked to his left when he was 100 feet from the

16

intersection, he could have seen respondents approaching from the left a similar distance from the intersection and traveling at a similar speed. It was broad daylight, the intersection was unobstructed, and both vehicles were in plain view of the respective drivers.

"'There is no finding that, had appellant looked, he would have observed that the disfavored was inattentive to her driving, or that any other circumstance would have been observed which would have given notice that the disfavored driver did not intend to yield the right of way. There is no finding that appellant was driving in a manner which would tend to confuse or deceive the disfavored driver.

"'The conclusion is inescapable, on these facts, that had appellant looked and seen respondent's car when both were 100 feet from the intersection, appellant would have been entirely warranted in proceeding on the assumption that he would be accorded the right of way. Nor did the situation change as the two vehicles approached the intersection. Appellant at all times had the right to assume that the disfavored driver, observing appellant's steady progress towards and into the intersection, would slow down or change his course so as to grant the right of way. There came a time, of course, when appellant could and did see that the right of way was not being yielded. By then, however, it was too late to avoid the collision.

"'The facts here found distinguish this case from those cases, cited by respondents, where the plaintiff failed to act promptly to avoid an accident, after observing, or negligently failing to observe, the disfavored driver crossing, or attempting to cross, the intersection immediately ahead of the plaintiff. (Citing cases.)

"'For the reasons indicated, the findings of fact entered by the trial court do not support the court's ultimate finding or conclusion that appellant's failure to look to his left and see respondent's vehicle was a proximate cause of the accident. Contributory negligence was therefore not established. We need not and do not decide whether the favored driver had a duty to look to his left.'" 252 P.2d at 318, 319.

Whether plaintiff first saw the defendant's vehicle when he was a car length away, 30 feet away, or 50 feet away from the other vehicle, nothing in this record shows that an observation at any of

17

those points would have led plaintiff to believe that the right of way would not be yielded to him in time for him to avoid the collision. Plaintiff's lookout, therefore, could not be a proximate cause in this case. Plaintiff was correct in relying on his right of way and assuming that the less favored driver would respect the right of way.

I would therefore reverse this cause and remand it to the District Court with instructions to find the defendant negligent as a matter of law, enter a directed verdict as to liability and let the jury re-examine the issue of damages.

It should be said that defendant's contention that plaintiff's alleged negligence should be considered in this cause because we now have comparative negligence instead of contributory negligence is, of course, weightless. Negligence is negligence, whether it is contributory or comparative. The comparative negligence statute did not do away with the concept of proximate cause.

John Ce. Sheehy
                                    Justice

18