**281 P.2d 209**

**Leonard BATES, Plaintiff and Appellant,**

**v.**

**Odell Walker BURNS et al., Defendants and Respondents.**

**No. 8207.**

Supreme Court of Utah.

March 18, 1955.

------◆------

Robert Murray Stewart, Salt Lake City, for appellant.

Stewart, Cannon & Hansen, Salt Lake City, for respondent.

WORTHEN, Justice.

Plaintiff brought this action to recover damages sustained when his pick-up truck was hit by defendants' coal truck (tractor and trailer) loaded with twelve tons of coal.

The case was tried to a jury resulting in a verdict in favor of plaintiff. Upon motion the trial court set aside the verdict and judgment, pursuant to Rule 50(b), and entered judgment for defendants, "no cause of action."

This appeal is taken from the judgment entered in favor of defendants.

The basis of plaintiff's appeal is that the evidence establishes conclusively that 1) defendant was negligent and that defendant's negligence was the proximate cause of the collision and plaintiff's damages and 2) that plaintiff was free from any contributory negligence which either proximately caused, or proximately contributed to produce the accident and plaintiff's resulting injury and damages.

The collision occurred about 2 p. m. on October 9, 1952, just north of the intersection of U. S. Highway 91 with 3rd West Street in Pleasant Grove City, Utah County. Said intersecting street as it continues south of Highway 91 is known as Utah Highway 114 or Geneva Road.

U. S. Highway 91 is a four lane highway divided by a neutral zone of approximately one foot. The two south or west lanes of traffic accommodate southbound traffic while northbound traffic is accommodated by the two north or east lanes of traffic. Each traffic lane is 10 feet wide and the overall distance from the west edge of the southbound lanes to the east edge of the northbound lanes is 41 feet. The neutral zone of 1 foot separating the north and southbound lanes of traffic is not elevated but is level with the rest of the highway being marked by two yellow lines one adjacent to the inside of the northbound lanes and one adjacent to the inside of the southbound lanes of traffic.

Plaintiff was driving his pick-up truck from his turkey ranch south of Pleasant Grove to Pleasant Grove for feed. Plaintiff testified that he stopped at the stop sign where he waited several minutes before he entered the intersection; he looked both ways and the *road was clear,* there was no traffic either way, he started moving from the stop sign which was some distance south of the south line of the intersection, traveling in low gear, at 5 or 6 miles per hour. He had got past the center of Highway 91 when he saw the coal truck coming, it was "maybe 150 feet away," at which time he was across the center line of Highway 91, he "did speed up a little right on the last" and got nearly across when he was hit. Plaintiff estimated the point of impact, and the point was measured upon plaintiff's Exhibit "A" at 125 feet from the stop sign where he had stopped.

Plaintiff's Exhibit "A", received in evidence, is a map of the intersection and ad-

jacent area drawn to a scale of 1″ to 25′ by a State Road Commission Engineer. (a photograph of which exhibit is set out herein)

There is positive testimony in the record that plaintiff had crossed over the center line of Highway 91 when defendant was "maybe 150" feet away.

The evidence justifies finding (a) that defendants' coal truck with the coal weighed 18 tons; (b) that defendant was traveling at a speed of from 40 to 50 miles per hour in a 40 mile zone; (c) that defendant could have seen plaintiff at the time plaintiff entered the intersection for a distance of over 400 feet.

Defendant testified that plaintiff was started across the highway when defendant was 100 feet away from the intersection.

It was the trial court's duty in considering defendant's motion for judgment, notwithstanding the verdict, to review the evidence, together with every inference fairly arising therefrom, in the light most favorable to the plaintiff, and similarly, must consider any lack or failure of evidence in the same light.[1] Applying this rule how, then, stands the case?

We are of the opinion that the trial court was in error in holding that plaintiff was

1. Coombs v. Perry, 2 Utah 2d 381, 275 P. 2d 680; Toomer's Estate v. Union Pac. Railroad Co, Utah, 239 P.2d 163; Great American Indemnity Co. v. Berryessa, Utah, 248 P.2d 367, and McCollum v. Clothier, Utah, 241 P.2d 468.

guilty of contributory negligence as a matter of law and erred in setting aside the jury's verdict and entering judgment for defendant.

■ The question of defendant's negligence was resolved by the jury under appropriate instructions.

We are of the opinion that the evidence would justify the jury in finding defendant negligent (for the purpose of the motion presented) on all three grounds alleged by plaintiff—(1) that he traveled at an excessive rate of speed and at a rate higher than the legal rate at that place and faster than was safe under the circumstances; (2) that he failed to keep a proper lookout; and (3) that he failed to honor plaintiff's right of way and yield. Further, there is considerable evidence that he failed to keep his truck under proper and safe control.

The jury could have found defendant traveling 50 miles per hour in a 40 mile zone. So, too, the physical facts indicating defendant's lack of control of the truck would justify the jury in concluding a high speed. Although the defendant had an unobstructed view of the intersection from the time defendant was more than 1,250 feet away, yet, he testified that he didn't see plaintiff until he, defendant, was 100 feet east of the intersection. As to defendant's failure to keep his truck under proper or safe control,—one of defendant's witnesses, a peace officer, testified that scuff marks on the pavement were visible for 22 feet east of the point of impact, and he further testified that the coal truck, after striking plaintiff's truck and turning it from a north to a westerly course, traveled a total distance of 188 feet and struck a shed before stopping.

As to which vehicle had the right of way the evidence is thus:

There is evidence that plaintiff was (10) ten feet over the center line and well into the northbound traffic lanes when defendant was "maybe 150" feet east of the point of impact. The jury could have found that defendant was traveling from 8 to 10 times as fast as plaintiff. At these respective speeds, defendant would have been more than 350 feet east of the intersection when plaintiff entered thereon.

■ Plaintiff not only entered the intersection first, he had nearly passed over it before defendant entered. Plaintiff was the disfavored driver until he had entered the intersection at a time when no car traveling the through highway had entered the intersection or was approaching so closely on said through highway as to constitute an immediate hazard. But having entered as authorized, he became the favored driver and all other vehicles approaching the intersection on said through highway were obliged to yield the right of way to him.

Section 57-7-138 U.C.A.1943, 41-6-74 U.C.A.1953, provides:

"Vehicle entering a through highway—The driver of a vehicle shall stop as required by this act at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway."

Of what advantage is the right of way to plaintiff if it is not protected by the trial court?

Recently this Court said:

"The right-of-way rule simply means this: that if two persons are so proceeding that if they continued their course there would be danger of collision, the disfavored one (defendant) must give way, and the favored one (plaintiff) may proceed; and the favored one (plaintiff) may assume that this will be done." [2]

■ There is no question that plaintiff, under the most favorable evidence, was careful and free from negligence as he began to move from the stop sign. It

is urged that plaintiff was looking west and continued to do so as he entered the intersection when he should have been looking for traffic from the east. But until plaintiff reached the center of the intersection he was concerned only with traffic coming from the west.

The evidence discloses that plaintiff looked to the east when he was about 10 feet north of the center line—at that time defendant was about 150 feet east of the point of impact.

If plaintiff were negligent at all, it consisted in one or both of two things: (1) traveling at a low rate of speed,—and (2) entering the northbound lanes of traffic without looking to survey his situation. (However plaintiff was favored with the right of way when he entered the intersection and he still had it when he was 10 feet over the center line.)

To say that a person is negligent as a matter of law for traveling across a through highway at 5 or 6 miles an hour is to say that many people with truck, tractor, farm equipment and wagon have no rights, and cross such highway at their risk.

We are not ready to say that as a matter of law plaintiff was guilty of negligence in traversing said intersection at that speed. It was a proper question to be answered by the jury under proper instructions. The jury answered it in the negative.

2. Coombs v. Perry, supra [2 Utah 2d 381, 275 P.2d 684].

Let it be assumed that the plaintiff was negligent in not looking as he crossed over the center line and into the northbound lanes of traffic, still, that negligence, if any, was not shown to be the proximate cause or a proximately contributory cause of the collision. Plaintiff's position and defendant's position were still as safe at the time plaintiff crossed the center line and until he was 10 feet beyond as if he had diligently surveyed the highway.

Had plaintiff looked just prior to, or at the time of, crossing the center line, defendant's position would not have alerted plaintiff to any danger—then defendant would have been further away from the intersection than at the time he did look. Had plaintiff looked it would not have affected defendant's driving or speed. Defendant testified that he never saw plaintiff till defendant was within 100 feet of the intersection. Unless plaintiff had been able to cast some hypnotic spell over defendant his looking earlier would have had no effect on the collision.

It is suggested that if plaintiff had looked before he crossed the center line he could have stopped or speeded up or turned to the left. However, had plaintiff looked as he was about to start across the center line, there would have been nothing to alert plaintiff to any danger or occasion for a changed course. Defendant was then still further away. Any sense of danger would have been less then, than 2 seconds later. He had the right of way.

He was in the intersection while defendant was from 200 to 300 feet away. Plaintiff would not have been called upon to do anything different to protect himself or defendant.

How then is the situation when plaintiff (10 feet over into the northbound traffic lanes) sees defendant in a 40 mile zone 150 feet away? What did plaintiff do then that he should not have done or what did he fail to do that he should have done?

Plaintiff testified that he speeded up a little. That would seem to have been prudent. His pick-up truck pretty well obstructed the inside lane of the northbound road. Had he stopped then as quickly as possible, his truck would have pretty well obstructed the highway. Had plaintiff's truck been so stopped it would have required defendant to go off the highway on the north side or to cut in behind the pick-up and cross over onto the southbound lanes of traffic.

We believe the question of plaintiff's contributory negligence was a jury question which they resolved in plaintiff's favor. We are likewise satisfied that they correctly found that issue in favor of plaintiff.

It is indeed difficult to see how any negligence of plaintiff could possibly have contributed to the collision.

The evidence discloses that plaintiff was struck about 3 feet back of the front end

of his truck; that the point of impact was 125 feet north of the stop sign. That distance measured on plaintiff's Exhibit "A" would put the front end of plaintiff's truck 10 feet north off the north or east edge of Highway 91 and over onto what would be the shoulder of said highway if the surfaced 3rd West Street did not run right to Highway 91.

When struck, plaintiff's pick-up truck had cleared the inside of south lane of northbound traffic, and the rear end of the pick-up truck (which was 17 feet long) was 13 feet from the south side of the northbound lanes of traffic. There was at that time 14 feet of space between the plaintiff's truck and the south side of the neutral zone of 1 foot dividing the northbound and southbound traffic lanes.

An examination of the photograph of the intersection plat demonstrates that had defendant remained on the highway and used the inside or south lane he could have passed behind plaintiff's truck.

However, it is urged that when defendant was east of the point of impact 100 or 150 feet he assumed plaintiff would stop. Had defendant observed plaintiff he would have known that plaintiff was moving slowly across the highway. Defendant was not justified in any such assumption.

Had defendant exercised due care for his and plaintiff's safety he would likely have concluded that he should slow down or pass south of the pick-up which could have been done without hazard. So far as the record discloses no southbound traffic was on the highway, and defendant had the entire south lane on the north side of the highway and also the two southbound lanes.

We think that the testimony of defendant indicates that he considered he had the right of way and intended to keep it.

The defendant testified that he was about 100 feet from the intersection when he first saw the plaintiff—that at that time plaintiff was crossing the highway. When asked why he didn't attempt to stop or slow down when he first saw the plaintiff's truck, he answered:

"Well, the fact that I *didn't stop or slow down,* is that he was quite a ways from the yellow line, or the center line of the highway. I took for granted that he would yield the right of way to me, which I figured I was entitled to." (Emphasis ours.)

The evidence discloses that defendant did not apply his brakes until he was 50 to 75 feet from where the Holdaway car was stopped, which was some distance northwest of the point of impact. But the jury was justified in finding that at the time plaintiff reached the center of the intersection defendant was over 250 feet east of the point of impact. Plaintiff had the right of way with all the rights of the favored driver. Had defendant looked as the law required him to do, he would

have seen, and if he had seen, he could have avoided the collision by the simple expedient of *slowing down or stopping* (or turning to the left). Certainly defendant could not avoid the collision by heedlessly continuing on in face of the apparent danger. In the ordinary reaction time of ¾ second (the time between recognition of danger and application of brakes) defendant traveling 50 miles per hour would have traveled 55 feet before his brakes were applied. Under normal conditions the stopping distance on surfaced highway after brakes have been applied is 128 feet at 50 m. p. h. Had defendant looked and seen what he should and could have seen when plaintiff was at the center of the intersection, he could have stopped within 183 feet and 67 feet short of the point of impact. Of course, had he been observing the speed limit he could have stopped after observing plaintiff at the center of the highway in 126 feet or 124 feet short of the point of impact.[3]

In its memorandum decision the trial court instead of pointing out and considering the evidence most favorable to plaintiff (which presumably the jury believed and accepted) commented on the evidence least favorable to plaintiff and observed:

"If he had looked as the law required him to do, he would have seen, and if he had seen he could have avoided the collision by the simple expedient of stopping, turning aside, or even speeding up."

This statement begs the question—it assumes that plaintiff had no right except to make the highway safe for defendant. The court applied to the favored driver the rule which should have been applied to defendant, the disfavored driver. On the motion after verdict for plaintiff the court appropriately could have said:

If defendant had looked as the law required him to do, he would have seen, and if he had seen he could have avoided the collision by the simple expedient of slowing down, stopping or turning to the left.

It cannot be questioned that plaintiff was in the intersection so substantially ahead of defendant that he clearly had the right of way and he could be found by the jury to be within the standard of reasonable care in assuming that defendant saw him and would yield the right of way and that plaintiff reasonably relied on such assumption and there was nothing to warn him to the contrary until it was too late for him to do anything to avoid the collision.

█ Plaintiff was the favored driver and we cannot hold that reasonable men would not disagree that plaintiff failed to act with due care. As observed by Mr. Justice Wolfe in his concurring opinion in Martin v. Stevens, Utah, 243 P.2d 747, 754, "The disfavored driver has the duty to slow

---

3. Walker v. Peterson, 3 Utah 2d 54, 278 P. 2d 291.

down; and while the favored driver cannot totally ignore the other and blindly traverse the intersection, he can, until he is otherwise put on notice, presume that the disfavored driver will slow down and permit him to pass, *but it is for the jury to determine* whether under all the circumstances the favored driver could indulge in the presumption that the disfavored driver would yield him the right of way and under the circumstances, the weight it should give that presumption, if any."

In determining whether it must be held as a matter of law that the plaintiff was negligent, which negligence contributed to cause his injury, consideration must be given not only the fact that he had the right of way, upon which he could place reliance, but also upon the fact that he had substantially traversed the highway before defendant entered the intersection. Plaintiff was not obliged to anticipate that defendant, while traversing the 150 feet before he struck plaintiff, would speed, nor was he obliged to anticipate that defendant would fail to keep his car under control. Neither was plaintiff obliged to anticipate that defendant would try to pass in front of him when it would appear, as it doubtless appeared to the jury, that in the exercise of due care defendant would have passed behind plaintiff.

In order to justify the trial court in upsetting plaintiff's judgment defendant must prove that the evidence showed with such certainty that all reasonable minds must so conclude, that plaintiff *was negligent;* and that such negligence concurred in proximately causing his own injury. We cannot agree that such a conclusion can be reached.

We have considered the additional errors charged by both appellant and respondent but see no merit to the same and no reason to discuss them.

The order of the trial court is reversed and the case is remanded with instructions to reinstate the verdict in plaintiff's favor. Costs to appellant.

McDONOUGH, C. J., and CROCKETT and WADE, JJ., concur.

HENRIOD, J., concurs in the result.