No. 12046

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

_____

MARGARET A. DeVERNIERO and
JAMES V. DeVERNIERO,

                Plaintiffs and Appellants,

   -vs-

MARK ALLEN EBY,

                Defendant and Respondent.

_____

Appeal from:  District Court of the Thirteenth Judicial District,
               Honorable C. B. Sande, Judge presiding.

Counsel of Record:

    For Appellants:

        Hutton, Schiltz and Sheehy, Billings, Montana.
        John C. Sheehy argued, Billings, Montana.

    For Respondent:

        Crowley, Kilbourne, Haughey, Hanson and Gallagher,
         Billings, Montana.
        George C. Dalthorp and Jack S. Ramirez argued,
         Billings, Montana.

_____

                    Submitted:  January 10, 1972

                      Decided:  APR 19 1972

Filed:  APR 19 1972

_Thomas J. Kearney_
                  Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is a negligence action brought by plaintiffs Margaret A. DeVerniero and James V. DeVerniero, husband and wife, arising out of an automobile accident in Billings, Montana, involving plaintiff Margaret A. DeVerniero and defendant Mark Allen Eby, represented by his father, Allen H. Eby, appointed guardian ad litem. The case was tried to the district court sitting with a jury, in the thirteen judicial district, county of Yellowstone.

Margaret A. DeVerniero and James V. DeVerniero are joined as plaintiffs in this action to recover damages for physical injuries sustained by the wife; and for the loss of the wife's services, companionship, and society sustained by the husband; all alleged to have been the result of the automobile accident. From a judgment entered on a verdict for defendant, plaintiffs appeal.

The accident here involved occurred at 2:00 p.m., January 22, 1968, at the intersection of Alderson Avenue and Third Street West in the city of Billings. At the time of the accident, the streets were described as having snow, ice, and water on them, with temperatures warm enough so that the snow and ice were melting and water running. Plaintiffs did not maintain that the presence of slush or ice on the streets had any effect on the accident.

Defendant Mark Eby was driving a 1963 Pontiac station wagon in a northerly direction on Third Street West toward the intersection at a speed of approximately 25 miles per hour.

Plaintiff Margaret DeVerniero was driving a 1966 Dodge Monaco in a westerly direction on Alderson Avenue toward the intersection at a speed of between 20 to 25 miles per hour.

Although testimony as to the speed of both automobiles ranged from 15 to 25 miles per hour, the only independent eyewitness, Beverly Runkle, testified the vehicles were approaching the intersection at approximately the same speed. Neither automobile was exceeding the speed limit of 25 miles per hour.

The intersecting streets were of equal status and were not marked with stop signs, stop lights, or warning approach signals. Neither party contested the fact that the presence of sufficient afternoon daylight and the absence of obstructions in the line of sight of both drivers gave each driver an unobstructed view for the safe operation of his automobile at the unmarked intersection.

It is uncontested that in such a situation as existed here---where two vehicles are entering or approaching an intersection from different highways at approximately the same time, that under Montana statute section 32-2170, R.C.M. 1947, and sections 21-145 and 21-170, Billings Traffic Code, the driver of the vehicle on the left is required to yield the right of way to the vehicle on the right. Here, defendant was on the left and plaintiff was on the right, therefore plaintiff was the favored driver.

At trial, Margaret DeVerniero testified that as she approached the intersection she slowed down to about 15 miles per hour and looked "again and again both ways"; that she did

not "remember seeing anything"; and the first she saw of the other vehicle was "Just before the impact." Thus at trial, Mrs. DeVerniero was completely unable to remember seeing the other automobile approaching, although she did remember looking both ways as she approached the intersection.

Plaintiffs' Exhibit 10, the investigation report filed by Police Officer John Colter, contained this interview with Mrs. DeVerniero immediately following the accident:

> "That she was going W. on Alderson at approx. 20 MPH as she approached the intersection of Alderson and 3rd St.W. she observed another veh. going No. on 3rd St. She thought the other car would stop and grant the right of way and when she realized that it wasn't going to she applied her brakes and it was too late to avoid the acc."

The same accident report also contained a similar interview with the defendant, Mark Eby, driver of the other vehicle:

> "That he was going No. on 3rd St.W. at approx. 25 MPH. He did not see the other veh. until he was just entering the intersection he applied his brakes but could not avoid the acc."

At trial, defendant Mark Eby supplemented this report with his testimony, repeating that he did not see plaintiff's vehicle until he had entered the intersection, and "I accelerated because I thought I could get out of the way in time."

At the point of impact plaintiff's automobile struck the right rear door of defendant's automobile and came to rest in the intersection, while defendant's automobile continued down Alderson Avenue, spun around, and struck two parked automobiles. Defendant and his passenger, Mark Longo, were unhurt. Plaintiff was knocked momentarily unconscious when her head struck the steering wheel of her automobile. Shortly thereafter Officer

Colter of the Billings Police Department arrived at the scene, made measurements, and talked to both parties.

The measurements taken by Officer Colter revealed the point of impact was approximately 12 feet into the intersection from the easterly boundary of Third Street West and 16 feet from the northerly boundary of Alderson Avenue. The north-south dimensions of the intersection are 32 feet and the east-west dimensions are 30 feet.

For the purposes of this appeal, the medical history of plaintiff Margaret DeVerniero's injuries is not recited, although it was thoroughly explored at trial. It is sufficient to state that in the intervening period of time from the accident to the date of trial, she alleged spinal injuries which necessitated a spinal fusion, continuing migraine headaches, and a resulting "thoracic outlet syndrome" which necessitated a separate operation to remove a rib.

Complaint was filed on January 26, 1970, reciting two claims for relief and joining Margaret and James DeVerniero as plaintiffs. Margaret DeVerniero in her amended prayer at trial recited $7,500 special damages and $150,000 general damages. James DeVerniero similarly amended his prayer to recite $82,500 damages.

Trial commenced on December 1, 1970, and resulted in a jury verdict in favor of defendant, Mark Eby. During trial several motions and objections were made by counsel for plaintiffs which are the basis of this appeal.

Plaintiffs' issues presented for review are:

Issue 1. Plaintiff, Margaret DeVerniero, as a matter of law, was not guilty of contributory negligence; the issue should not have been submitted to the jury.

Issue 2. The court order of December 4, 1970, allowing defendant's counsel to inspect all medical records of plaintiff in two hospitals, irrespective of the relationship to plaintiff's physical condition from the accident, was an abuse of Rule 35, M.R.Civ.P. The order became prejudicial to the plaintiff and the court erred to plaintiff's prejudice when it allowed evidence of hospital records not related to the accident under the guise of impeachment.

Issues 4 and 5 concern instructions that were given or refused by the trial court.

Conceding his own negligence, defendant argues that the plaintiff in approaching and entering an uncontrolled intersection without observing the vehicle to her left and colliding with defendant's vehicle which had passed in front of her, is not free from contributory neglgence and such factual issue should have been placed before the jury for its determination upon the facts.

Here, it is important to note that at the close of evidence at trial the court instructed the jury defendant was negligent as a matter of law, for failure to yield the right of way. Plaintiffs appeal on the basis of the denial of their motion for directed verdict on liability and the giving of jury instructions on contributory negligence.

The duty of drivers approaching and entering an uncontrolled intersection is contained in section 32-2170, R.C.M. 1947:

- 6 -

"Vehicle approaching or entering intersection.
(a) When two (2) vehicles enter or approach an
intersection from different highways at approxi-
mately the same time, the driver of the vehicle
on the left shall yield the right of way to the
vehicle on the right. * * *"

The record discloses the provisions of section 32-2170, R.C.M.

1947, were stipulated to by counsel. City ordinance No. 3069,

the Billings Traffic Code, in section 21-170 provides the

identical wording as section 32-2170, R.C.M. 1947.

Defendant's failure to yield the right of way constituted

both statutorily recognized duty and breach of that duty. It is

clear that by statutory directive automobiles approaching or

entering an intersection are accorded the status of favored

and disfavored drivers to facilitate the orderly movement of

automobiles.

Defendant, conceding his failure to yield the right of

way, nevertheless argues plaintiff was guilty of contributory

negligence in her failure to keep a lookout and to control her

automobile. Defendant argues that plaintiff's duty as she

approached the intersection was to: (1) look ahead and later-

ally ahead, (2) operate her car at a speed no greater than

was reasonably proper under the circumstances then existing,

and (3) keep her car under control.

For authority defendant relies on Autio v. Miller, 92

Mont. 150, 165, 11 P.2d 1039, which held:

"The driver must look 'not only straight ahead,
but laterally ahead.' [Citing cases] 'Moreover,
a person is presumed to see that which he could
see by looking. * * * He will not be permitted
to say that he did not see what he must have seen,
had he looked,' * * *'The duty to keep a lookout
includes the duty to see that which is in plain
sight.'"

This contention has merit in the limited area to which it applies --- negligence, but standing alone does not demonstrate contributory negligence in as much as no consideration has been given to proximate cause. Contributory negligence by definition in Montana includes "proximate cause", and this strict formula does not tolerate any less or remote "contribution" by the plaintiff. Plaintiff's conduct must not only "contribute" to the injury but must contribute as a "proximate cause". This is demonstrated in Montana Jury Instruction Guides, No. 11.00:

> "Contributory negligence is negligence on the part of a claimant which contributed as a proximate cause to his injury."

Also see: Wolf v. O'Leary, Inc., 132 Mont. 468, 318 P.2d 582.

Proximate cause is a twofold legal concept which may limit liability depending upon the existence of (1) an intervening act and (2) the unforseeability of that intervening act. This Court stated in Sztaba v. Great Northern Ry., 147 Mont. 185, 195, 411 P.2d 379:

> "Causation is a fact. It is important to determine causation first to avoid its confusion with the issues to follow. This is not a relationship between negligence and injury, but rather a causal relation between conduct and hurt, both of which are factual concepts. It is only after the causal relationship, duty, and its scope are found that the negligence issue is reached. 61 Col.L.R. 1401.
>
> "The test most generally employed in determining causation is the 'but for' test. Montana has adopted this test in numerous cases.
>
> "Proximate cause is one 'which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which the injury would not have occurred.' Stroud v. Chicago, M.St.P. & P.Ry. Co., 75 Mont. 384, 393, 243 P. 1089, 1092." (Emphasis supplied)

On the point of proximate cause, defendant seems to hint the "but for" doctrine can be applied in a manner that approaches "last clear chance", which of course is not our case, by the assertion that the accident could have been easily avoided by the slightest deceleration on the part of plaintiff had she been keeping a proper lookout. This is a misapplication of the rule under the facts of this case. There is nothing in the record to indicate that plaintiff would have been alerted to any danger had she seen defendant's vehicle at a point when she could have stopped. Defendant gave no indication he was not going to yield the right of way, by traveling too fast, or by being inattentive. Remembering, also, that it is defendant's duty to yield, there is no law that would hold plaintiff responsible for failure to anticipate that defendant would accelerate to pass in front of plaintiff at the last instant, when there was no chance for plaintiff to stop. Rather, when all appeared normal, plaintiff had every right to assume defendant would yield, as the law requires.

Defendant argues at length that plaintiff has no right to ignore "obvious danger" in a blind uncompromising reliance upon the right of way. Support for this position has been cited at length and defendant relies on cases such as Flynn v. Helena Cab & Bus Co., 94 Mont. 204, 21 P.2d 1105, which cites Autio. Flynn is a well-reasoned and correctly decided case, but factually easily distinguishable from the instant case.

Here, there is no similar fact or any facts to be considered concerning proceeding in the face of obvious danger. This was an absolutely normal appearing situation, until the

defendant accelerated through the intersection and whatever his stated reasons for so doing will not shift the proximate cause to the plaintiff. If this rationale could be applied to the fact situation, it would by implication render meaningless the right of way regulations designed to avoid, in any case, a race for the intersection. Additionally, failure to accept defendant's argument does not abrogate the duty to keep a lookout by all parties, as defendant seems to indicate.

The distinction pointed out here is stated in very concise language by the Utah Supreme Court in Bates v. Burns, 3 Utah 2d 180, 281 P.2d 209, 213:

> "Had plaintiff looked just prior to, or at the time of, crossing the center line, defendant's position would not have alerted plaintiff to any danger--then defendant would have been further away from the intersection than at the time he did look. Had plaintiff looked it would not have affected defendant's driving or speed. Defendant testified that he never saw plaintiff till defendant was within 100 feet of the intersection. Unless plaintiff had been able to cast some hypnotic spell over defendant his looking earlier would have had no effect on the collision."

The failure of the record to demonstrate any negligence of the plaintiff that contributed as a proximate cause to her injuries compels the finding that plaintiff was not contributorily negligent, as a matter of law.

Plaintiffs' Issue 2, although grounded on an order of the trial court given under Rules 34 and 35, M.R.Civ.P., concerns itself in the main with impeachment based on the facts of this case and does not bring the rules themselves squarely before this Court in a manner that would require interpretation or clarification.

In view of our holding herein, the remaining issues need not be discussed/they relate only to matters within the facts of this cause and should not appear at retrial.

The judgment of the trial court is reversed and a new trial is ordered on the issue of damages.

_____
Associate Justice

We concur:

_____
Chief Justice

_____

_____
Associate Justice

- 11 -

Mr. Justice Wesley Castles dissenting:

I dissent.

The facts of this case show the collision to have taken place when the front of plaintiff's automobile was but 12 feet into the intersection, the rear of her car had not entered the intersection. Defendant's automobile was about to exit from the intersection when the collision occurred. It is clear that if plaintiff had maintained a lookout as she was required to do, and which she did not do, she would have seen defendant's car crossing the intersection in her path in time to avoid the collision.

Here, blind and uncompromising reliance upon a right of way is held by the majority opinion as to not raise a jury question as to whether that is negligence. I wonder if the Court would apply that stringent a rule to a pedestrian. This Court in Autio v. Miller, 92 Mont. 150, 166, 11 P.2d 1039, did not and said "* * * But this does not relieve him [the driver with the right of way] from exercising due care under the circumstances." In Autio it was an eight year old boy.

In Jessen v. O'Daniel, 136 Mont. 513, 349 P.2d 107, this Court affirmed a plaintiff's judgment for the disfavored driver. Also in Flynn v. Helena Cab & Bus Co., 94 Mont. 204, 21 P.2d 1105, the cab driver who had the right of way was found not entitled to rely blindly upon his right of way.

The majority opinion recognizes these cases as the correct law but by some "mystic" of a discussion of proximate cause does not find them applicable here. Additionally, the majority

opinion, seemingly in an effort to justify its holding,
states in referring to facts distinguishing this case from
Flynn, that "* * * This was an absolutely normal appearing
situation until the defendant accelerated through the inter-
section * * *." This simply is not the record unless one
takes completely out of context the testimony of defendant.

I would affirm the judgment and verdict of the jury.

_Wesley Castles_
Associate Justice.