JOHN GREEN, Plaintiff and Appellant, *v.* FRANK E. HAGELE, Defendant and Respondent.

No. 14117.
Submitted March 23, 1979.
Decided May 23, 1979.
Rehearing Denied July 5, 1979.
595 P.2d 1159.

Murphy, Robinson, Heckathorn & Phillips, I. James Heckathorn (argued), Kalispell, for plaintiff and appellant.

Garlington, Lohn & Robinson, Gary L. Graham (argued), Missoula, for defendent and respondent.

MR. JUSTICE DALY delivered the opinion of the Court.

Plaintiff John Green appeals from the judgment and denial of a new trial of the District Court, Eleventh Judicial District, Flathead County, rendered in favor of defendant Frank Hagele in a personal injury action resulting from a hunting accident.

On October 21, 1973, Green, Hagele and his wife Beatrice, were hunting together on Hagele's property at Lake Blaine near Kalispell, Montana. The hunting party went out shortly after 4:30 p.m. Hagele gave the individual members instructions on where to hunt and where to meet. Essentially, each person was to work into the woods about 150 to 300 yards from the others. They were to reach general areas, wait, and then Hagele would come to them.

According to defendant, when the time came to end the hunt and get everyone together, he started to walk slowly to where Green was supposed to be. As he was walking, he heard a branch break

and looking to the source of the sound, he saw what appeared to be a white-tailed deer climbing a bank. He saw a dark patch like the color of a deer and what he identified as the deer's tail wagging back and forth. Looking at it through the scope on his rifle at a distance of approximately 150 feet, defendant maintains that it looked like a deer trying to sneak away. He took aim and fired. He ran to his target and discovered Green, who was shot through the left leg just above the knee.

Green's actions and apparel at the time of the shooting are in dispute. Green had seen Hagele coming and had whistled twice according to the prearranged plans. Although Hagele looked in his direction and started to walk toward him, Green concedes he received no answering whistle. At the time he was shot, Green states he was starting to walk toward Hagele.

As to his apparel, Green had on an orange stocking cap and a vest made of the required amount (at least 400 square inches) of hunter's orange. The parties disagree as to whether this vest was open or closed and as to whether it was or should have been visible to Hagele. Green was also wearing brown pants and had a black and white raven's feather attached to his rifle. It was this feather which Hagele claims he apparently mistook for the wagging of a deer's tail.

At trial both parties presented expert witnesses to testify as to whether Green's actions and apparel constituted contributory negligence barring his claim.

Although plaintiff phrases them differently, the issues presented to the Court on appeal are:

1. Whether there was sufficient evidence to support a jury conclusion that Green was contributorily negligent.

2. Whether the trial court was correct in sustaining the two objections to the cross-examination of one of the expert witnesses.

Plaintiff summarizes his contentions on this appeal as follows:

"Defendant intentionally shot Plaintiff, believing he was a deer, inflicting severe and disabling injuries. Defendant's negligence is irrefutable. The jury, by 8 to 4 decision, returned a verdict for the

Defendant. The case turned on contributory negligence of the Plaintiff. The Court erred in permitting opinion evidence that (1) wearing brownish trousers and (2) carrying a feather constituted negligence. The Court further erred in limiting the cross-examination of the purveyors of such opinion."

In support of his argument plaintiff Green begins by stating that it is axiomatic that the conduct of·a hunter who shoots at a target without taking the time and care necessary to ascertain that the target is in fact legal game, and not a human being, constitutes negligence as a matter of law. We agree.

Plaintiff then examines the allegations of contributory negligence that, although he had on an orange cap and a hunter orange vest, he wore brown trousers and carried a raven feather. Green asserts that the only requirement as to clothing was that hunters wear hunter orange. He notes further that, under the statute in effect at the time of the shooting, failure to wear hunter orange could not be treated as evidence of contributory negligence. Green argues that if it is not contributory negligence to fail to wear hunter orange, it could not be negligence to wear ordinary clothes in conjunction with hunter orange.

Green asserts his acts were typical, that he did not violate any law or breach a duty, and that his conduct was not such as would cause a reasonably prudent person to foresee harm.

The standard of conduct imposed for contributory negligence is the same as for primary negligence. The elements of contributory negligence are (1) a duty, (2) a violation thereof, and (3) injury as a proximate result thereof. It is not negligence to fail to anticipate injury which can come about only as a result of the negligence of another. There can be no negligence in the absence of a duty. The test is not what could have been done, but what was reasonably foreseeable. Plaintiff did nothing except be present at the scene. His only offense was being there and nothing he did was a proximate cause of his injury. There was no evidence of any negligence on the part of plaintiff.

As to the limitation of cross-examination, Green argues

that he should have been allowed to delve into the matters of qualifications and bases for opinions of Hagele's expert witnesses. Inquiry on cross-examination should be allowed as wide a range as may be reasonably necessary to test the skill and reliability of the witness. The cross-examination should be allowed to ask questions which would be wholly irrelevant except for the purpose of ascertaining the value of the witness's opinion or the degree of credibility to be attached to his testimony.

Defendant Hagele contends that Green did not object to any question asked of Hagele's experts or to their qualifications. Hagele notes the use of expert witnesses was not limited to the defense. Plaintiff called a game warden who testified that in his opinion Hagele did not act as a normal prudent hunter and further that Green was not at fault in any way for the accident.

Defendant next contends that the rule is that where there is substantial evidence to support the verdict, the District Court's refusal to grant a new trial will not be disturbed. Where the evidence is conflicting, the judgment will not be disturbed on appeal when substantial evidence appears in the record to support the judgment. Hagele maintains that the evidence to support the verdict is substantial.

As previously stated, the primary issue here is whether there was substantial evidence to support a finding by the jury that Green was contributorily negligent. We conclude there was no evidence of contributory negligence.

Initially, we note that at the time of the accident in 1973, the law in Montana was that contributory negligence on the part of a plaintiff barred recovery, section 58-607, R.C.M.1947, now section 27-1-701 MCA. Montana's comparative negligence statute does not apply. Section 58-607.1, R.C.M.1947, now section 27-1-702 MCA; *Dunham v. Southside National Bank* (1976), 169 Mont. 466, 474, 548, P.2d 1383, 1387. Neither side disputes this statement.

There are various kinds of hunting accidents when the negligence of the actor is open to question. However, "[i]t is ax-

iomatic that the conduct of a hunter who shoots at a target without taking the time and the care necessary to ascertain that the target is in fact legal game, and not a *human being*, constitutes negligence." Annot., 26 A.L.R.3d 561, 592. Depending on the facts, such as this case, defendant's negligence approaches that degree of culpability that could be considered gross negligence.

The Montana authority closest in point to the case under consideration, which was not considered by either party, is *Stephens v. Brown* (1972), 160 Mont. 453, 503 P.2d 667. In *Stephens* we have an incident on Whitefish Lake where at dusk but still light enough to see, with clear weather and a calm lake, two neighbors took their power boats out for a cruise. Stephens noted his rear light flickering and placed his boat in neutral and had his wife hold the steering wheel. She could not operate the boat, and it was moving slowly when Stephens left the controls. He proceeded to adjust the light on the rear of the boat. Mrs. Stephens observed the Brown boat traveling at high speed but was not concerned because it was clear, and the operator had time to avoid a collision. When it was too late, Mrs. Stephens stood up and screamed, but the Brown boat ran over them midship resulting in Mr. Stephens' death. In that case, there were stronger and more cogent arguments presented by defendants to establish a question of fact for the jury on contributory negligence. Yet, there as here, this Court properly held that the *sole proximate cause as a matter of law* was the negligence of the blindly speeding boat. "Before it is proper to submit the question of contributory negligence to the jury, there must be evidence not only indicating negligence on the part of the plaintiff but also that such evidence contributed as a proximate cause to the accident and resulting injuries." 160 Mont. at 457-58, 503 P.2d at 669. See also, *DeVerniero v. Eby* (1972), 159 Mont. 146, 496 P.2d 290, and cases cited therein.

In *DeVerniero* we pointed out that:

"Proximate cause is a twofold legal concept which may limit liability depending upon the existence of (1) an intervening act and (2) the unforeseeability of that intervening act . . .

" 'Causation is a fact. It is important to determine causation first to avoid its confusion with the issues to follow. *This is not a relationship between negligence and injury, but rather a causal relation between conduct and hurt, both of which are factual concepts.* It is only after the *causal relationship, duty,* and *its scope* are found that the negligence issue is reached. [Citation omitted.]

" 'The test most generally employed in determining *causation* is the "but for" test. Montana has adopted this test in numerous cases.

" 'Proximate cause is one "which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which the injury would not have occurred." [Citation omitted.]' " 159 Mont. at 152-53, 496 P.2d at 293. (Emphasis added.)

■ Here, it was defendant's duty to identify his target before using his weapon. There is no law or duty that would hold plaintiff responsible for his failure to anticipate that defendant would do otherwise under any circumstances. Plaintiff had every right to assume the defendant would respect and follow the law.

This was a normal hunting situation before defendant wounded plaintiff. His excuse for his conduct may be meritorious, but it cannot serve to shift the *proximate* cause to plaintiff.

The absence of any negligence that plaintiff contributed as a proximate cause to his injuries compels the finding that the trial court erred in submitting the matter to the jury and thereafter improperly denied plaintiff's motion for a new trial. In view of this holding, it is not necessary to discuss plaintiff's second issue.

The judgment of the District Court is reversed. Plaintiff was not contributorily negligent as a matter of law. The cause is remanded to the trial court for a trial on damages only.

MR. JUSTICES HARRISON, SHEA and SHEEHY concur.

MR. CHIEF JUSTICE HASWELL dissenting:

I would affirm the judgment of the District Court.

In my view the issues of negligence and contributory negligence in this case are issues to be determined by the jury, not questions of law to be decided by the Justices of this Court on appeal. Both negligence and contributory negligence consist of a want of ordinary care, i.e., a failure to do what a reasonable ·and prudent person would have done under the circumstances or doing what such person would not have done under existing circumstances. In my opinion, the evidence in this case is capable of more than one interpretation, the jury interpreted it in favor of defendant, and the jury determination should stand.