No. 91-112

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

EDWARD L. OLSON,

    Plaintiff and Appellant,

-vs-

JACOB A. PARCHEN,

    Defendant and Respondent.



APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Philip J. O'Connell; Thueson Law Office, Helena,
Montana.

    For Respondent:

        Lon T. Holden; Jardine, Stephenson, Blewett &
Weaver, Great Falls, Montana.

Submitted on Briefs: June 6, 1991

Decided: August 1, 1991

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Edward L. Olson appeals from a judgment of the District Court of the Eighth Judicial District, Cascade County, Montana, denying his motion for summary judgment on the issue of liability and granting Parchen's motion to exclude evidence of certain economic damages suffered in an automobile collision. Olson also appeals from the jury verdict finding him contributorily negligent. We affirm in part and reverse in part.

Olson presents the following issues:

1. Did the District Court err in denying Olson's motion for summary judgment on the issue of liability?

2. Did the District Court abuse its discretion by allowing the issue of contributory negligence to be submitted to the jury?

3. Did the District Court properly refuse to permit Olson to present evidence at trial of economic damages relating to loss of rental income and loss of profits from the sales of rental property?

On November 14, 1985, at approximately 4:15 p.m., vehicles operated by Edward L. Olson and Jacob A. Parchen collided at the intersection of First Avenue South and 18th Street in Great Falls, Montana. Olson was proceeding south on 18th Street as he approached the intersection, and Parchen was proceeding east on First Avenue South. Parchen failed to heed the yield right of way sign, and his 1977 GMC pickup truck collided with Olson's 1964

2

Chevrolet Corvair on the passenger side. Both drivers stated that they were traveling at fifteen miles per hour

Olson testified that a few moments prior to the collision he observed Parchen's vehicle approaching from the right, but thought that Parchen was going to stop. Olson looked to the left for traffic. When he glanced back to the right and realized that Parchen's pickup truck was not going to stop, Olson attempted to brake and turn to the left to avoid a collision, but was unsuccessful.

Parchen said that he did not see Olson's car until it had entered the intersection moments before the collision. He applied his brakes, but his pickup truck skidded. Parchen also theorized that Olson had been blinded by the setting sun and didn't see him approaching the intersection. Parchen asserted that Olson did not properly watch for traffic and should have been traveling slowly enough to stop.

The collision extensively damaged the right side of Olson's Corvair. Olson suffered a bruise over the right collar bone, broken upper dentures, a bruise on the right side of the scalp, and a deep bruise over the outside of his right foot. Olson also claimed economic losses resulting from his alleged inability to complete rental property renovations because of physical injuries sustained in the collision.

Olson moved for partial summary judgment on the issue of liability. The District Court denied that motion, as well as

3

Olson's subsequent motions for a directed verdict at the close of the evidence and for judgment notwithstanding the verdict. The District Court granted Parchen's motion in limine to exclude economic damages for losses associated with Olson's rental property from the jury's consideration. The District Court denied Olson's motion for a new trial to consider economic damages.

The jury found that Parchen was eighty per cent negligent and had proximately caused Olson's damages and injuries. Two thousand dollars in damages were awarded, of which Olson received $1,600.

I

Did the District Court err in denying Olson's motion for summary judgment on the issue of liability?

Olson claims that partial summary judgment should have been granted as a matter of law.

When approaching a "yield" sign, the following rule applies:

[T]he driver of a vehicle approaching the "Yield" sign shall slow to a speed of not more than 15 miles per hour and yield right-of-way to all vehicles approaching from the right or left on the intersecting roads or streets which are so close as to constitute an immediate hazard. If a driver is involved in a collision at an intersection or interferes with the movement of other vehicles after driving past a "Yield" sign, such collision or interference shall be deemed evidence of the driver's failure to yield right-of-way.

Section 61-8-342, MCA. A driver's failure to yield the right-of-way is both a "statutorily recognized duty and breach of that duty." DeVerniero v. Eby (1972), 159 Mont. 146, 151, 496 P.2d 290, 292.

Parchen admitted that he failed to yield the right-of-way to

4

Olson's vehicle, but argued that he was unable to stop because his vehicle skidded. Parchen also conjectured that Olson may have been unable to see Parchen's pickup truck because he was blinded by the sun. This argument is irrelevant because Parchen, not Olson, had a duty to yield. In addition, the skidding of Parchen's vehicle is not a defense; it suggests only that Parchen may have been driving too fast for conditions. As a matter of law, Parchen was negligent under § 61-8-342, MCA.

Nonetheless, Parchen maintains that the District Court properly denied Olson partial summary judgment according to our holding in Reed v. Little (1984), 209 Mont. 199, 680 P.2d 937. He contends that Reed requires the issue of liability to be submitted to the jury if the defense of contributory negligence is asserted in a traffic violation case.

The facts of this case can be distinguished from the facts forming the basis for our holding in Reed. In Reed, the defendant ran into the plaintiff's car when the plaintiff allegedly made a sudden stop in heavy traffic for no apparent reason. The plaintiff denied the sudden stop. Questions of fact regarding the speed and distances of the vehicles remained for the jury's determination. Reed, 209 Mont. at 206, 680 P.2d at 940-41. As explained in our discussion below, under the facts of this case Olson could not be found contributorily negligent.

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment

5

as a matter of law. Rule 56(c), M.R.Civ.P.; First Security Bank of Bozeman v. Jones (1990), 243 Mont. 301, 303, 794 P.2d 679, 681. Since Parchen was negligent as a matter of law, the court erred by denying partial summary judgment to Olson.

## II

Did the District Court abuse its discretion by allowing the issue of contributory negligence to be submitted to the jury?

Before the question of contributory negligence can be submitted to the jury, evidence must be presented not only showing plaintiff's negligence, but demonstrating that such negligence proximately caused the accident and resulting injuries. Stephens v. Brown (1972), 160 Mont. 453, 457-58, 503 P.2d 667, 669. No such factual evidence showing contributory negligence existed in this case.

Parchen argues that Olson violated the "basic rule" of § 61-8-303, MCA, by not properly watching for Parchen's vehicle at the intersection. Section 61-8-303 is entitled "Speed restrictions -- basic rule" and provides in part that a driver shall drive "in a careful and prudent manner, and at a rate of speed no greater than is reasonable and proper under the conditions. . . ." According to the evidence, at the time of the collision Olson was traveling in a safe manner well below the speed limit.

In DeVerniero, the defendant alleged that because plaintiff did not properly watch for the other vehicle, he was contributorily negligent. We held that even though the plaintiff may have failed

6

to look, his failure to observe defendant approaching was not the proximate cause of the accident:

> "Had plaintiff looked it would not have affected defendant's driving or speed. Defendant testified that he never saw plaintiff till defendant was within 100 feet of the intersection. Unless plaintiff had been able to cast some hypnotic spell over defendant his looking earlier would have had no effect on the collision."

DeVerniero, 159 Mont. at 154, 496 P.2d at 294 (quoting Bates v. Burns (Utah 1955), 281 P.2d 209, 213). The proximate cause of the collision was defendant's breach of his duty to yield right-of-way. Plaintiff could not be contributorily negligent when his actions were not the proximate cause of the accident. DeVerniero, 159 Mont. at 154, 496 P.2d at 294.

The case before us is even clearer than DeVerniero on the issue of contributory negligence because Olson did not violate the basic rule. Parchen, on the other hand, did breach the basic rule by failing to watch for traffic and by failing to drive at a speed allowing him to stop his vehicle in time to avoid the collision. According to Parchen, he did not see Olson's car in the intersection until moments before the collision. Olson said that he saw Parchen's pickup truck, but thought Parchen was going to stop and looked away momentarily. A driver of a vehicle traveling on a street protected by a "yield" sign has a right to rely upon the compliance of the driver of a vehicle which must yield with the yield right-of-way statutes. Olson cannot be contributorily negligent because his alleged failure to see Parchen's vehicle entering the intersection was not the proximate cause of the

7

collision.

Since the question of contributory negligence should not have been submitted to the jury, we reverse the jury's finding that Olson was twenty per cent negligent and remand to the District Court for entry of judgment accordingly.

III

Did the District Court properly refuse to permit Olson to present evidence at trial of economic damages relating to loss of rental income and loss of profits from the sales of rental property?

Olson asserts that the District Court abused its discretion in refusing to admit evidence of certain economic losses on the ground that they were speculative. Tort damages are allowed "for all the detriment proximately caused" by the breach "whether [the detriment] could have been anticipated or not." Section 27-1-317, MCA. Although damages need not be proved with precision, damages which are a matter of mere speculation cannot be the basis of recovery. Bottrell v. American Bank (1989), 237 Mont. 1, 22-23, 773 P.2d 694, 707-708.

Thus, damages for lost profits may be awarded if such loss is shown to be the "natural and direct result of the act of the defendant" and if the loss is not speculative. Hostetter v. Donlan (1986), 221 Mont. 380, 382, 719 P.2d 1243, 1245 (citing Cruse v. Clawson (1960), 137 Mont. 439, 448, 352 P.2d 989, 994). The prohibition against speculative profits does not necessarily apply

8

to uncertainty about the amount of such profits, but applies to uncertainty about "whether the loss of profits is the result of the wrong and whether such profit would have been derived at all." Stensvad v. Miners and Merchants Bank of Roundup (1982), 196 Mont. 193, 206, 640 P.2d 1303, 1310, cert. denied, 459 U.S. 831, 103 S.Ct. 69, 74 L.Ed.2d 69; Hostetter, 221 Mont. at 382-83, 719 P.2d at 1245.

Olson did not complete renovations on two rental buildings; they remained unoccupied for two years until he sold the properties. Olson maintained that alleged losses of rental income and alleged losses suffered when the rental properties were sold were attributable to his physical inability, caused by injuries suffered in the collision, to complete renovation of the properties. Less than two per cent of the necessary renovations to the rental properties were finished prior to the collision in which Olson was injured. During part of the time that the rental properties sat empty, Olson worked for Boeing Company as an electrician.

All of the theories underlying Olson's damage claims for loss of rents and profits are speculative. Olson could show only that he intended to restore the properties, that he might have been able to rent the restored properties, and that he might have garnered greater profits on the sale of the restored rental properties. We agree with the District Court that a question arises in Olson's case about "whether such profit would have been derived at all" and

that the profits Olson claimed he would have made are speculative.

Questions of admissibility of evidence are left largely to the discretion of the trial court. Zugg v. Ramage (1989), 239 Mont. 292, 296, 779 P.2d 913, 916. The District Court did not abuse its discretion in excluding evidence of lost profits as speculative.

The District Court shall enter judgment for the plaintiff in the total amount of $2,000, and the judgment is otherwise affirmed.

Justice

We concur:

Chief Justice

Justices

Justice Terry N. Trieweiler concurring in part and dissenting in part.

I concur with that part of the majority's opinion which relates to issues one and two; holds that plaintiff was entitled to judgment as a matter of law on the issue of liability, and holds that there was no evidence to support a finding of contributory negligence on the part of the plaintiff.

I dissent from that part of the majority's opinion which affirms the District Court's refusal to permit the plaintiff to present evidence at trial of economic damage resulting from the loss of rental income and lost profits.

The majority cavalierly dismissed Olson's damage claim with the following conclusion:

> All of the theories underlying Olson's damage claims for loss of rents and profits are speculative. Olson could show only that he intended to restore the properties, that he might have been able to rent the restored properties, and that he might have garnered greater profits on the sale of the restored rental properties. We agree with the District Court that a question arises in Olson's case about "whether such profit would have been derived at all" and that the profits Olson claimed he would have made are speculative.

To fully understand how inaccurate the majority's treatment of this issue is, it is necessary to set forth in full the complete text of the evidence plaintiff offered to present, had he been allowed to do so.

11

In a written offer of proof filed with the District Court prior to trial, plaintiff offered to prove the following facts through the following witnesses:

1.  Edward L. Olson will testify that before the automobile accident, he made a living by purchasing run down homes and apartments, renovating the same, renting the homes and apartments and selling the renovated buildings at a profit. Olson will testify that he performed virtually all of the renovation work himself, including: carpentry, plumbing, electrical, heating, plastering and painting. By performing the renovations himself, Olson was able to earn a substantial profit by adding value to the homes and apartments.

2.  Olson will testify that before the November 14, 1985 automobile accident, he owned the Alcoy Apartments located on 18th Street and a single family residence located at 2526 First Avenue South. Olson will testify that in October, 1985, he gutted the interior of Apartment No. 5 in the Alcoy Apartments and the home at 2526 First Avenue South. Olson intended to completely renovate Apartment No. 5 and the single family home during the winter of 1985 - 1986. He intended to relet the apartment and home in April, 1986 when the renovations had been completed.

3.  Olson will testify that he anticipated charging a rent of $185 per month for Apartment No. 5 in the Alcoy after the renovations were completed. He will testify that he anticipated charging a rent of at least $375 per month for the single family home.

4.  Olson will testify that as a result of the automobile accident, he was physically unable to complete the renovations to the two rental units. He will testify that he and his physician, Dr. James D. Hinde, expected that he would recover from the injuries suffered in the automobile accident within three to six months after the accident. However, he found that when he attempted to return to work, he suffered prolonged, debilitating pain and muscle spasms when he attempted to do the heavy lifting involved in the renovations.

12

5. Olson will testify that for more than two years following the accident, he expected that he would fully recover from his injuries and be able to complete the renovations and rent Apartment No. 5 in the Alcoy and the home at 2526 First Avenue South. His treating physician will also testify that he expected that [sic] Olson to recover from his injuries. However, by December, 1987, it became clear to Olson and Dr. Hinde that Olson would likely continue to suffer from chronic myofascial pain into the indefinite future. Accordingly, Olson decided that he would likely never be able to complete the renovations through his own efforts. Olson sold the rental units at the first opportunity, in the early spring of 1988.

6. Olson will testify that he sold the Alcoy Apartments to Rick Sowers in April, 1988 for $110,000. At the time of the sale, Apartment No. 5 was gutted, untenantable, and earning no income. The sales price of the Alcoy was reduced accordingly. Olson believes that the sales price was reduced by approximately 10% of the potential value of the Alcoy, or $11,000.

7. Olson will testify that he sold the single family home at 2526 First Avenue South to Don Bisgard and Mike Holland in June, 1988 for $30,000. Olson will testify that if he had been able to complete the renovations on the home, he would have been able to sell it for approximately $45,000. Additionally, a vacant building lot adjoining the home at 2526 First Avenue South was included in the $30,000 sale to Bisgard and Holland. Olson believes that he would have been able to sell the building lot separate from the home for a profit of between $8,000 and $12,000.

8. Rick Sowers, the present owner of the Alcoy Apartments will also testify. Sowers will testify that he also makes a living by buying older, run down homes, remodeling them and either renting or selling the homes for a profit. Sowers will testify that he is only able to make a profit remodeling older homes if he does all of the work himself. Sowers will testify that if he is unable to make the renovations himself, he is likely to loose money on a project.

13

9. Sowers will testify that after purchasing the Alcoy Apartments from Ed Olson, he completed the renovations on Apartment No. 5. Sowers will testify that he invested between 160 and 200 hours of his time and approximately $2,000 into the renovations. Sowers will testify that after completing the renovations, he immediately rented Apartment No. 5 at a rental of $250 per month. Since first renting the apartment, it has never been vacant even though four separate tenants have lived in the apartment.

10. Sowers will also testify that he paid $110,000 to purchase the Alcoy Apartments from Ed Olson. He will testify that the Alcoy would clearly have been worth more money had the renovations to Apartment No. 5 been completed, since Apartment No. 5 would then have been generating income which would have improved the cash flow of the building. Sowers will testify that he believes he would have paid $8,000 to $10,000 more for the Alcoy had Apartment No. 5 been fully renovated at the time he purchased it.

11. Don Bisgard will testify at trial. Bisgard will testify that he purchased the single family residence at 2526 First Avenue South from Ed Olson in the spring of 1988 at a cost of $30,000. Bisgard will testify that he and his partner, Mike Holland, are also in the business of remodeling and selling older homes. Bisgard will also testify that he is only able to make a profit in the remodeling business by doing the work himself. Bisgard will testify that after spending $30,000 to purchase the home at 2526 First Avenue South, he invested approximately $8,860 in materials, $3,200 in labor and approximately $2,900 in miscellaneous costs. Bisgard sold the home at 2526 First Avenue South after completing renovations for $41,900. Additionally, Bisgard split off the adjoining vacant lot and sold that lot separately after building a new house on the lot. For his accounting purposes, Bisgard assigns a value of $5,000 to the vacant lot, separate and apart from the value of the renovated house.

12. The foregoing is a brief summary of the evidence to be offered at trial regarding the economic losses suffered by Ed Olson as a consequence of the November 14, 1985 automobile accident.

14

Plaintiff was never given an opportunity to offer the above evidence. However, for purposes of our review, we must presume that he was capable of proving what he offered to prove. In that event, there was nothing speculative about his damages. In fact, the proof that he would have offered exceeded all of the prior requirements established by this Court for the proof of lost profits and economic damages.

We held in *Cruse v. Clawson* (1960), 137 Mont. 439, 448, 352 P.2d 989, 994, that:

> [I]n Montana the rule is that a person may recover for loss of profits where it is shown that such loss is the natural and direct result of the act of the defendant complained of and that such amount is certain and not speculative.

Plaintiff satisfied the *Cruse* requirement by offering to prove through his own testimony and the testimony of his physician that he was unable to complete the renovation of his rental properties due to the injury he sustained in his collision with the defendant.

In *Vinion v. Wood Yard, Inc.* (1988), 232 Mont. 110, 113, 755 P.2d 31, 34, we reaffirmed "[t]hat the owner of property may testify as to its value." In this case, therefore, plaintiff was qualified to testify to the value of his property, with and without the improvements that he would have made, but for his injury. The District Court abused its discretion by disallowing that testimony.

In *Vinion*, we affirmed a verdict of damages for the plaintiff based solely upon his opinion testimony about the diminution in

15

value of his building which resulted from damage caused by the defendant, even though neither the plaintiff nor defendant's experts were able to assess the impact of the structural damage on the value of the building. We held that:

> Wood Yard [defendant] admitted that it caused the damages in this case. If it is reasonably certain that damages were sustained by the wrongful act or breach of the defendant, then reasonable damages rationally supported by the evidence will be upheld. *Castillo v. Franks* (Mont. 1984), [213 Mont. 232,] 690 P.2d 425, 431, 41 St.Rep. 2071.

*Vinion*, 232 Mont. at 113, 775 P.2d at 34.

In this case, the plaintiff offered specific opinion evidence regarding the diminution in the value of his building, due to his inability to complete the improvements he had started. He also offered qualified opinion evidence regarding the rental value of the property, had he been permitted to complete it. However, in addition to his own opinion, plaintiff went further than he was required to go by our previous case law when he offered the testimony of the people who purchased his rental properties to corroborate his own opinion testimony. The proof in this case was more than was required by our previous decision in *Cremer v. Cremer Rodeo Land & Livestock Co.* (1981), 192 Mont. 208, 214, 627 P.2d 1199, 1202, where, when discussing proof of lost profits and rental proceeds, we held that:

> Recovery of damages will not be denied, even if the mathematical precision of the figure is challenged, provided the evidence is sufficient to afford a

16

reasonable basis for determining the specific amount awarded. Accord, *Jacqueline's Washington, Inc. v. Mercantile Stores Co.* (1972) 80 Wash.2d 784, 498 P.2d 870.

In *Stensvad v. Miners & Merchants Bank* (1982), 196 Mont. 193, 206, 640 P.2d 1303, 1310, when discussing damages for lost profits, we held that:

> Damages for loss of profits may be awarded if not speculative. *Silfvast v. Asplund* (1935), 99 Mont. 152, 161, 42 P.2d 452, 456. The rule that prohibits speculative profits does not apply to uncertainty as to the amount of such profits, but to uncertainty or speculation as to whether the loss of profits is the result of the wrong and whether such profit would have been derived at all. *Tri-Tron Intern. v. Velto.* (9th Cir. 1975), 525 F.2d 432, 437. Once liability is shown, that is the certainty that the damages are caused by the breach, then loss of profits on a reasonable basis for computation and the best evidence available under the circumstances will support a reasonably close estimate of the loss by a District Court. *Smith v. Zepp* (1977), 173 Mont. 358, 370, 567 P.2d 923, 930. But no damages are recoverable which are not clearly ascertainable both in nature and origin, and only profits which are reasonably certain may be awarded. *Smith v. Fergus County* (1934), 98 Mont. 377, 386, 39 P.2d 193, 195.

The holding of the majority in this case is contrary to all precedent established by this Court during the past ten years for the proof of lost profits. The result of the majority's opinion is to create an impossible burden for any property owner who is put in the unfortunate position of having to prove the nature and extent of his damage when he is unable to maintain or improve his personal or real property, due to the negligence of another.

As shown by the above offer of proof, there is nothing questionable about plaintiff's ability to rent his property had he

17

completed its restoration. The subsequent owner did complete the restoration and immediately rented the property. There was nothing questionable about Olson's opinion that he would have sold the property for a greater profit had the improvements been completed. The purchaser of the property did complete the improvements and offered to testify that the property had a greater value following the completion of those improvements.

I strongly disagree with the majority's conclusion that "[a]ll of the theories underlying Olson's damage claims for loss of rents and profits are speculative." There was absolutely nothing speculative about the evidence that plaintiff sought to present regarding his loss of profits and business income.

For these reasons, I conclude that the District Court abused its discretion by excluding plaintiff's proof that he was economically damaged by loss of rental income and profits from the sale of rental property. I would reverse the District Court and remand this case for a new trial on the issue of damages.

_____
Justice

We concur in the foregoing concurrence and dissent of Justice Trieweiler.

_____

_____
Justices

18